
FILED

Sep 03 2009, 11:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT
David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Peter S. French
Joseph P. Rompala
Lewis & Kappes, P.C.
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 29S02-0810-CV-584

IN RE THE MARRIAGE OF:

MAHMOUD M. BASILEH,

*Appellant (Plaintiff below),*

v.

ARWA G. ALGHUSAIN,

*Appellee (Defendant below).*

Appeal from the Hamilton Superior Court 1, No. 29D01-0112-DR-833
The Honorable Steven R. Nation, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 29A02-0712-CV-1132

**September 3, 2009**

**Rucker, Justice.**

In this post-dissolution action the Indiana trial court relinquished its jurisdiction over matters of child support to a California trial court. At issue is the interplay between the Full Faith and Credit for Child Support Orders Act and the Uniform Interstate Family Support Act. We affirm the judgment of the trial court.

**Background and Procedural History**

The marriage between Arwa Alghusain (Mother) and Mahmoud Basileh (Father) was dissolved in Indiana – the Hamilton Superior Court – in 2002. The parties were awarded joint legal custody of their two minor children with Mother having physical custody. The parties agreed to a weekly child support amount payable by Father to Mother and to a liberal visitation schedule between Father and the children. At the time of dissolution, Mother indicated her intention to relocate with the children to Monterey County, California, and the parties' visitation schedule accounted for the relocation.

The cooperative relationship between the parents apparently fell apart, and in May 2004 Mother filed a petition for modification and sought transfer of jurisdiction to California. At some point in mid- to late-2004, Father, who is a United States citizen, left Indiana for his native country of Jordan in order to care for his ailing mother. On December 1, 2004, Father lost his Indiana job after he was unable to return to the United States following expiration of his leave under the Family Medical Leave Act. Father later explained that he was unable to return because his mother still had not recovered from her illness. Father remained in Jordan seeking employment in either Jordan or the United States.

In February 2005, Mother registered the parties' Indiana dissolution decree and the agreements concerning child custody, parenting time, and child support with the Monterey County, California trial court. Mother also filed with the California court an "Application for Order and Support Declaration." Appellant's App. at 50. In response, the California court entered a temporary order pertaining to visitation and custody, but not support. In the meantime Father filed in the Indiana court an objection to Mother's petition to transfer jurisdiction to California. On May 6, 2005, the Indiana court granted Mother's motion with a written order that provided: "After reviewing the pleadings and hearing the arguments of counsel, the Court hereby

2

concedes and relinquishes its jurisdiction under the [Uniform Child Custody Jurisdiction Act] to the Superior Court of Monterey County, California. All pending matters will be transferred to be heard by the Superior Court in California." Appellant's App. at 64. Father did not appeal.

Thereafter, the California court accepted jurisdiction over child custody and visitation matters, but concluded that jurisdiction over child support matters had not been transferred from Indiana. In August 2007, the California court sent a "Memorandum" to the Indiana court informing the court that Mother and the children resided in California, that Father "now resides in Saudi Arabia," and that the parties had conducted visitation following orders issued by the California court. Id. at 66. The California court also inquired "whether Hamilton County [Indiana] will cede jurisdiction to Monterey County [California]." Id. The judge of the Hamilton Superior Court issued an order ceding jurisdiction "in all matters pertaining to visitation, custody, and child support matters[,]" noting that this is what he intended to do in 2005. Appellant's App. at 11-12.

Father appealed and the Court of Appeals affirmed the judgment of the trial court. In doing so the Court of Appeals reviewed Indiana's version of the Uniform Interstate Family Support Act ("UIFSA," sometimes referred to as the "Uniform Act") and the federal Full Faith and Credit for Child Support Orders Act ("FFCCSOA," sometimes referred to as the "Federal Act"). The court determined: (1) Father was not a resident of Indiana within the meaning of the Federal Act, and (2) the Federal Act preempts the Uniform Act because of a conflict between the two statutes. Basileh v. Alghusain, 890 N.E.2d 779 (Ind. Ct. App. 2008). We granted transfer to address the Court of Appeals' preemption determination. We summarily affirm its determination concerning residency.[1]

**Discussion**

The trial court's 2005 order ceded jurisdiction to the California court pursuant to the Uniform Child Custody Jurisdiction Act ("UCCJA"), which deals with child custody matters.

---

[1] Although the Court of Appeals addressed the question of residency in the context of the FFCCSOA, the court's rationale is equally applicable to the UIFSA.

3

See State ex rel. Meade v. Marshall Super. Ct. II, 644 N.E.2d 87, 89 n.2 (Ind. 1994) ("[T]he legislature has provided for jurisdictional stability among the states by adopting the Uniform Child Custody Jurisdiction Act . . . .  The purpose of this act is to 'discourage continuing controversies over child custody' and to 'avoid re-litigation of custody decisions of other states in this state.'" (quoting Ind. Code § 31-1-11.6-1(4), (6) (1994))).  However, the instant appeal, which involves child support matters, implicates the Federal Act and Indiana's version of the Uniform Act.  The Indiana version provides in relevant part:

> An Indiana tribunal that issues a support order consistent with Indiana law has continuing, exclusive jurisdiction over a child support order:
>
> (1)  if Indiana remains the residence of the:
>   (A)  obligor;
>   (B)  individual obligee; or
>   (C) child for whose benefit the support order is issued; *or*
>
> (2)  until each individual party has filed written consent with the Indiana tribunal for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Ind. Code § 31-18-2-5(a) (emphasis added).  The Federal Act provides in relevant part:

> Continuing jurisdiction.–A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.

28 U.S.C. § 1738B.  In concluding that the Federal Act preempts Indiana's version of the Uniform Act, the Court of Appeals determined there was a "crucial" distinction between the two; namely, the Uniform Act requires the parties' written consent to another state's jurisdiction, whereas the Federal Act does not.  Basileh, 890 N.E.2d at 785.  This conclusion hinged on the court's interpretation of the word "or" in I.C. § 31-18-2-5 that links subsection (a)(1) (the nonresidency requirement) and subsection (a)(2) (the consent requirement).

4

*General Rules of Federal Preemption*

The Supremacy Clause, which provides in relevant part that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2, provides Congress with the power to preempt state law. Courts, however, are reluctant to presume that preemption of state law has occurred. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663-64 (1993) ("In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.").

Three variations of federal preemption doctrine exist: express preemption, which occurs when a statute expressly defines the scope of its preemptive effect, Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992), field preemption, which occurs when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area, English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990), and conflict preemption, which occurs when there is an outright conflict between federal and state law and thus it is either impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73 (2000). In this case the Court of Appeals relied on conflict preemption to determine that Indiana's version of UIFSA must yield to the FFCCSOA. "[T]he language of Indiana Code § 31-18-2-5(a) and 28 U.S.C. § 1738B (d) and (e) render the state and federal laws in conflict because they define continuing, exclusive jurisdiction differently." Basileh, 890 N.E.2d at 785 n.7.

Preemption is basically a question of congressional intent. Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 30 (1996). "'[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case." Altria Group, Inc. v. Good, __ U.S. __, 129 S.Ct. 538, 543 (2008) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). But, "[t]here is indeed a presumption against pre-emption in areas of traditional state regulation such as family law." Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 151 (2001). The best evidence of preemptive intent is an express preemption clause. Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 895

(2000). However, in the absence of explicit preemption language, courts examine the structure and purpose of the federal statute for implicit preemptory intent. Barnett Bank of Marion County, 517 U.S. at 31. See also Altria Group, 129 S.Ct. at 543 ("Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law."); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) ("Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'") (internal citations omitted).

*Does the FFCCSOA Preempt Indiana's Version of UIFSA?*

In 1988 Congress established the United States Commission on Interstate Child Support ("Commission") to offer recommendations on the resolution of interstate child support problems. As part of its recommendations, the Commission "declared its support for the Uniform Interstate Family Support Act . . . [and] also recommended that Congress mandate adoption of UIFSA by the States." H.R. Rep. No. 102-982, at 4-5 (1992). As a consequence of the Commission's work the FFCCSOA was signed into law in 1994. See Pub. L. No. 103-383, § 3 (1994) (codified at 28 U.S.C. § 1738B). From the beginning FFCCSOA was intended to be consistent with UIFSA. See, e.g., H.R. Rep. No. 102-982, at 5 (1992) ("[FFCCSOA, as proposed,] is consistent with the recommendations of the Commission and the terms of UIFSA."); see also H.R. Rep. No. 103-206, at 4 (1993) (same).

In 1996, the Indiana legislature enacted its first version of UIFSA, following the 1992 model promulgated by the Commission. Pub.L. No. 116-1996, § 4 (codified at Ind. Code § 31-1.5 (1996)). In order for states to receive federal funding for aid to families with dependent children, effective October 1, 1996, Congress passed legislation requiring all fifty states to adopt UIFSA, including all amendments adopted by the Commission through August 1996. See Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 42 U.S.C. § 666 (f) (2009). In 1997, Indiana amended its UIFSA to account for the 1996 amendments adopted by

6

the Commission and recodified the statute at Ind. Code § 31-18-2-5. Pub.L. No. 1-1997, § 10. Indiana's UIFSA is nearly identical to the 1996 federal version.[2]

Congress apparently anticipated the necessity of amending FFCCSOA to comply with UIFSA. <u>See, e.g.</u>, 141 Cong. Rec. S2823-02, S2887 (1995) (stating in summary of the Interstate Child Support Responsibility Act of 1995 that "The Full Faith and Credit Act, signed into law last year, which requires every state to respect child support orders from other states, would be modified to follow UIFSA."). And although conflicts between the two acts were recognized, they were characterized as unintentional.[3] Subsequent revisions to the Federal Act were intended

---

[2] Although amended in 2001, the 1996 version of the Uniform Interstate Family Support Act, upon which Indiana's UIFSA is based, read:

> (a) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child-support order:
>
> > (1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; *or*
> > (2) until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Unif. Interstate Family Support Act § 205 (1996) (emphasis added).

[3] For example, the Former Chair of the Commission testified before the Senate Finance Committee and the House Committee on Ways and Means:

> In order to achieve a "one order, one time" rule, Congress recently amended [FFCCSOA] to add a section that requires full faith and credit to child support orders, including ongoing and administrative orders, that are based on valid exercises of jurisdiction. *In defining jurisdiction, the Act attempts to be consistent with the UIFSA . . . .*
>
> Unfortunately, as currently enacted, [FFCCSOA] conflicts with UIFSA. It requires recognition of orders that would not be entitled to recognition under UIFSA. There are several other inconsistencies with UIFSA that also need correcting. I urge Congress to make these technical amendments as quickly as possible. States are currently in a great deal of
>
> confusion. *The inconsistencies were unintentional,* and can be easily corrected.

<u>Child Support Enforcement: Before S. Comm. on Finance</u>, 104th Cong. 1995 WL 133889 (1995) (testimony of Margaret Campbell Haynes, Former Chair, U.S. Commission on Interstate Child Support)

to correct any conflicts and make the Federal Act consistent with the Uniform Act. See H.R. Conf. Rep. No. 104-725, at 351 (1996), reprinted in 1996 U.S.C.C.A.N. 2649, 2739 (revisions to FFCCSOA proposed "to ensure that full faith and credit laws can be applied consistently with UIFSA"); H.R. Rep. 104-651, at 1413 (1996) reprinted in 1996 U.S.C.C.A.N. 2183, 2472 (same); 142 Cong. Rec. H8829-02, H8919 (1996) (same); H.R. Conf. Rep. No. 104-430, at 416 (1995) (same).

The application of general rules of federal preemption leads us to conclude that Congress did not intend the Federal Act to preempt the Uniform Act. Rather, it appears that FFCCSOA was intended to follow the contours of UIFSA. There is no indication in the text of FFCCSOA or its legislative history of any intent to preempt UIFSA. And importantly for our purposes the specific provisions here at issue in Indiana's version of the Uniform Act – the nonresidency requirement and the consent requirement – are closely modeled after the federal version of the Uniform Act. See supra note 2. "The very fact that Congress mandated that all fifty states adopt UIFSA strongly mitigates against a construction of FFCCSOA that would impliedly preempt UIFSA to any degree." LeTellier v. LeTellier, 40 S.W.3d 490, 498 (Tenn. 2001). We therefore also conclude that the FFCCSOA does not preempt the Indiana version of UIFSA.

*Reconciliation of the Federal Act and the Uniform Act*

Although we conclude Congress did not intend that the Federal Act preempt Indiana's version of the Uniform Act, we do acknowledge the Uniform Act contains a jurisdictional provision that is absent in the Federal Act, namely: a consent requirement. More specifically, I.C. § 31-18-2-5(a) essentially provides that an Indiana court retains continuing, exclusive jurisdiction "if" a party or related child remains in Indiana, "or until" each party has filed written consent to jurisdiction elsewhere. The Court of Appeals in this case interpreted this provision to mean that Indiana retains jurisdiction unless both of these conditions are met. The net effect of the court's interpretation is that in order for Indiana no longer to retain continuing jurisdiction both the nonresidency requirement *and* the written consent requirement must be met. However

---

(emphasis added); Welfare Revision-Child Support: Before the Subcomm. on Human Resources, Comm. on Ways and Means, 104th Cong. 1995 WL 45575 (1995) (testimony of Margaret Campbell Haynes, Former Chair, U.S. Commission on Interstate Child Support) (emphasis added).

we are of the view that the statute is ambiguous on this point because it is susceptible to an alternative interpretation.[4]

The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947 (Ind. 2001). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Sees v. Bank One, Ind., N.A., 839 N.E.2d 154, 157 (Ind. 2005). Clear and unambiguous statutes leave no room for judicial construction. Id. However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. City of N. Vernon v. Jennings Nw. Reg'l Utils., 829 N.E.2d 1, 4 (Ind. 2005); Amoco Prod. Co. v. Laird, 622 N.E.2d 912, 915 (Ind. 1993). And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature. City of N. Vernon, 829 N.E.2d at 4.

The corresponding section of the federal UIFSA upon which the Indiana Legislature based I.C. § 31-18-2-5(a) is Section 205 of the 1996 version of UIFSA. The drafters of the 1996 version set forth in relevant part the following Comment to Section 205:

> [I]f all the relevant persons–the obligor, the individual obligee, and the child–have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. . . .
>
> [T]he issuing state *may also* lose its continuing, exclusive jurisdiction to modify if the parties consent in writing for another state to assume jurisdiction to modify *(even though one of the parties or the child continues to reside in the issuing state).*

Unif. Interstate Family Support Act § 205 cmt. (1996) (emphasis added). The comments to a uniform act are indicative of the Legislature's intent in enacting a statute based on the uniform

---

[4] But see Brickner v. Brickner, 723 N.E.2d 468, 472 (Ind. Ct. App. 2000) (declaring, "The statutory language of UIFSA is plain and unambiguous in its requirement . . . that Indiana courts maintain exclusive jurisdiction to enforce such decrees as long as either the obligor, obligee, or child lives in Indiana or until all parties consent to modification by another state.").

act.  See In re Lawrance, 579 N.E.2d 32, 38 (Ind. 1991) (noting it is permissible "to consider the notes of the Commissioners of Uniform Laws when construing a uniform statute") (quoting Eads v. J & J Sales Corp., 257 Ind. 485, 275 N.E.2d 802, 806 (1971)).  Given that the 1996 version of section 205 of UIFSA and I.C. § 31-18-2-5(a) are almost identical, we find the language of the Comment to UIFSA (1996) § 205 to be a strong indicator of the legislative intent when it enacted I.C. § 31-18-2-5, namely:  subsection (a)(1) (the nonresidency requirement) and subsection (a)(2) (the consent requirement) are separate and alternative methods by which an Indiana court may maintain its continuing, exclusive jurisdiction over a child support order; and thus do not require *both* the absence of the parties *and* consent before a court loses jurisdiction.[5]

In this case it is of no moment that the parties did not file a written consent with the Indiana court for the California court to modify the Indiana support order.  Rather, the Indiana court lost its jurisdiction because Father, like Mother and the children, is no longer an Indiana resident.

## Conclusion

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

---

[5] We also observe: (1) courts of other states that have addressed this issue have reached the same conclusion.  See, e.g., McHale v. McHale, 109 P.3d 89 (Ariz. Ct. App. 2005); Linn v. Delaware Child Support Enforcement, 736 A.2d 954 (Del. 1999); In re Marriage of Metz, 69 P.3d 1128 (Kan. Ct. App. 2003); Groseth v. Groseth, 600 N.W.2d 159 (Neb. 1999); Etter v. Etter, 18 P.3d 1088 (Okla. Civ. App. 2001);  and (2) a 2001 amendment to the consent requirement in the federal USIFA provides that a state maintains continuing, exclusive jurisdiction: "even if this State is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, [if] the parties consent in a record or in open court that the tribunal of this State may continue to exercise jurisdiction to modify its order."  Unif. Interstate Family Support Act § 205 (2001).