ATTORNEYS FOR APPELLANT
KENNEDY TANK & MFG. CO., INC.
Craig J. Helmreich
Brandon K. Wiseman
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLANTS
HEMLOCK SEMICONDUCTOR OPERATIONS LLC
AND HEMLOCK SEMICONDUCTOR, LLC
A. Richard M. Blaiklock
Charles R. Whybrew
Edward D. Thomas
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
John R. Maley
Peter J. Rusthoven
T. Joseph Wendt
Barnes & Thornburg LLP
Indianapolis, Indiana



FILED

Jan 03 2017, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S02-1608-CT-431

KENNEDY TANK & MFG. CO., INC.,                                   *Appellant-Defendant, Third-Party Plaintiff,*
AND
HEMLOCK SEMICONDUCTOR OPERATIONS LLC AND
HEMLOCK SEMICONDUCTOR, LLC,                                      *Appellants, Third-Party Defendants,*

v.

EMMERT INDUSTRIAL CORPORATION
D/B/A EMMERT INTERNATIONAL,                                      *Appellee-Plaintiff.*

Appeal from the Marion Superior Court Civil Division 1, No. 49D01-1501-CT-2052
The Honorable Heather A. Welch, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1507-CT-934

**January 3, 2017**

**Rush, Chief Justice.**

After Emmert Industrial Corporation ("Emmert") successfully transported an enormous process tower vessel from Indiana to Tennessee, the vessel's manufacturer—Kennedy Tank & Manufacturing Company ("Kennedy")—refused to pay nearly $700,000 in unforeseen transportation expenses. Emmert attempted to collect, but Kennedy still had not paid by the time a federal statute of limitations expired. Emmert eventually sued for breach of contract and unjust enrichment, and Kennedy raised the federal statute of limitations as an affirmative defense, arguing it preempts Indiana's longer limitations period. On this issue of first impression, we disagree with Kennedy and hold that Indiana's ten-year statute of limitations is not preempted. Emmert's collection claim may therefore proceed.

## Facts and Procedural History

Kennedy needed a process tower vessel transported from its headquarters in Indianapolis, Indiana, to Hemlock Semiconductor's ("Hemlock") location in Clarksville, Tennessee. The vessel was massive—about 280 feet long, 18 feet wide, and 16 feet tall, and weighing about 360,000 pounds. Kennedy contracted with Emmert, an Oregon-based heavy-haul transporter, to get it to Clarksville. Their contract—which specified it should be interpreted under Indiana law—called for Kennedy to pay $197,650.00 plus additional unforeseen costs.

Many of those additional unforeseen costs piled up. The I-64 bridge between Indiana and Kentucky unexpectedly closed, requiring an alternate route. This led to additional route surveys and permit applications in Indiana, Illinois, Missouri, and Tennessee. Altogether, construction delays, road closures, permit applications, safety escorts, and bureaucratic delays cost Emmert an additional $691,301.03. Despite these troubles, Emmert delivered the vessel on November 11, 2011.

Emmert then tried to collect the additional costs from Kennedy. They discussed the dispute through January 2013, then considered arbitration from June to August 2014. But, in September 2014, Kennedy refused to pay any additional charges, claiming to owe nothing because of the federal eighteen-month statute of limitations in 49 U.S.C. section 14705(a). Emmert then sued, alleging breach of contract and, in the alternative, unjust enrichment.

Kennedy moved to dismiss Emmert's complaint under Indiana Trial Rules 12(B)(1) and 12(B)(6), relying on the eighteen-month federal statute of limitations. Emmert responded that dismissal was inappropriate because the federal statute did not preempt Indiana's ten-year

2

limitations period in Indiana Code section 34-11-2-11. Emmert also claimed that the parties' settlement discussions equitably estopped Kennedy from asserting the federal statute of limitations. The trial court denied the motion to dismiss, finding no preemption.

Following the denial of its motion, Kennedy brought Hemlock into the case—alleging Hemlock's responsibility for any additional charges—and filed this interlocutory appeal. The Court of Appeals reversed the trial court, finding that Indiana's statute of limitations was preempted, Kennedy Tank & Mfg. Co. v. Emmert Indus. Corp., 53 N.E.3d 505, 509–11 (Ind. Ct. App. 2016), and that Emmert waived the equitable estoppel issue on appeal, id. at 506 n.2. Emmert sought transfer, which we granted—thus vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

We now affirm the trial court, agreeing that Indiana's statute of limitations is not preempted.

**Standard of Review**

We review the denial of Kennedy's motion to dismiss de novo. Teaching Our Posterity Success, Inc. v. Ind. Dept. of Educ., 20 N.E.3d 149, 151 (Ind. 2014). To determine if this denial was appropriate, we must first determine whether Indiana's statute of limitations is preempted—a question of law, Hardy v. Hardy, 963 N.E.2d 470, 473 (Ind. 2012), abrogated on other grounds by Hillman v. Maretta, 133 S. Ct. 1943 (2013), that we also review de novo, see Clippinger v. State, 54 N.E.3d 986, 988 (Ind. 2016).

**Discussion and Decision**

Our analysis begins with a presumption against preemption, which Kennedy and Hemlock bear the burden to overcome. Yet here, Congress has provided no indication that it intended to impose a uniform national statute of limitations, and breach of contract collection actions are not an area of federal regulation. Furthermore, other jurisdictions addressing this issue provide little guidance and do not compel a different result. Kennedy and Hemlock thus fail to carry their burden to show that Indiana's statute of limitations on contract collection actions is preempted.[1]

---

[1] Because Indiana's statute of limitations is not preempted, we need not address Kennedy's argument that 49 U.S.C. section 14705(a) provides a statute of repose rather than a statute of limitations. We do note, though, that Indiana Trial Rule 12(B)(1) is not a proper procedural vehicle for a motion to dismiss based on either type of statute. See R.L. Turner Corp. v. Brownsburg, 963 N.E.2d 453, 457 (Ind. 2012); Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 n.4 (Ind. 2012).

**I. Standard Principles of Federal Preemption Guide This Analysis.**

It has "long been settled" that a preemption analysis begins with the presumption that federal statutes do not preempt state law. Bond v. United States, 134 S. Ct. 2077, 2088 (2014). The presumption against preemption comes from two concepts "central to the constitutional design"—the Supremacy Clause and federalism. See Arizona v. United States, 132 S. Ct. 2492, 2500 (2012). Although the Supremacy Clause[2] gives Congress the power to preempt state law, federalism requires that we do not easily find preemption. See id. at 2501. In fact, we find preemption only if it is "the clear and manifest purpose of Congress." Id. Kennedy and Hemlock, then, must show that clear and manifest purpose in order to overcome the presumption against preemption. Russ. Media Grp., LLC v. Cable Am., Inc., 598 F.3d 302, 309 (7th Cir. 2010).

Congress can preempt state law in three ways: express preemption, field preemption, and conflict preemption. Basileh v. Alghusain, 912 N.E.2d 814, 818 (Ind. 2009). Express preemption exists when Congress states the statute's preemptive effect. Id. Field preemption applies when Congress creates "exclusive federal regulation of the area." Id. And conflict preemption preempts a state law that conflicts with federal law. Arizona, 132 S. Ct. at 2501.

This case involves only conflict preemption. Conflict preemption voids a state law in two different situations: (1) when it is "physically impossible" to comply with both the state and federal laws, Wyeth v. Levine, 555 U.S. 555, 590 (2009), and (2) when the state law does "major damage" to the federal law's purpose, Patriotic Veterans, Inc. v. Indiana, 736 F.3d 1041, 1050 (7th Cir. 2013) (quoting Hillman, 133 S.Ct. at 1950). See also Sprietsma v. Mercury Marine, 537 U.S. 51, 64–65 (2002).

The first type of conflict preemption—physical impossibility—is a "demanding defense" that asks whether *any* party *could ever* comply with the state and federal statutes. See Wyeth, 555 U.S. at 573; Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 291 (1987) (finding no preemption when "compliance with both statutes 'is theoretically possible'"). Because Emmert could have filed suit within the eighteen-month federal limitations period, physical impossibility preemption does not apply here. See Marsh v. Rosenbloom, 499 F.3d 165, 178 (2d Cir. 2007)

---

[2] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

(finding no "physical impossibility" conflict preemption when a plaintiff *could have* complied with three-year and six-year limitations periods by filing suit within three years).

Kennedy and Hemlock therefore rely on the second type of conflict preemption, arguing that Indiana's statute of limitations does "major damage" to Congress's purpose in enacting the federal statute of limitations.

## II.     Indiana's Statute of Limitations for Contract Collection Actions Does Not Do "Major Damage" to Congress's Purpose.

Indiana's statute of limitations does not do "major damage" to Congress's purpose because Congress used the Interstate Commerce Commission Termination Act ("ICCTA"), Pub. L. No. 104-88, 109 Stat. 803 (1995), to shift regulatory authority from the federal government to the states—not to assert federal authority over state-law collection actions. After all, we are primarily concerned with "the nature of the activities which the States have sought to regulate," Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317–18 (1981) (quoting San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 243 (1959)), and here, those activities are areas of state authority.

### A.   *The federal statute of limitations's purpose is not to create a uniform national standard.*

Congress's purpose is the "ultimate touchstone" for all types of preemption, Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (quoting Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, 375 U.S. 96, 103 (1963)), but it is especially important for the second type of conflict preemption, where a state law is preempted if it does "major damage" to the federal law's purpose, Patriotic Veterans, 736 F.3d at 1050 (quoting Hillman, 133 S. Ct. at 1950). We conclude that Congress's purpose for section 14705(a) was not to impose a standard national statute of limitations, and therefore Indiana's longer period does not do "major damage" to the federal scheme.

We discern Congress's purpose by "examining the federal statute as a whole and identifying its purpose and intended effects." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000). The federal statute of limitations at issue here, 49 U.S.C. section 14705(a), is part of the ICCTA—which, as its name suggests and as discussed below, significantly *reduced* federal regulation of interstate commerce. The statute of limitations is straightforward: "A carrier providing transportation or service subject to [federal] jurisdiction . . . must begin a civil action to

recover charges for transportation or service provided by the carrier within 18 months after the claim accrues." 49 U.S.C. § 14705(a). Our inquiry, however, is not whether the federal statute is unclear, but whether applying Indiana's longer statute would do "major damage" to the ICCTA's overarching purpose of deregulation. We conclude it would not.

Kennedy and Hemlock argue that the federal statute of limitations is meant to create a uniform national standard for interstate transportation and to encourage the diligent pursuit of claims once they are known. If Congress intended to provide a uniform national standard, it could easily have expressly made this statute of limitations a national one. For example, in certain environmental tort actions under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), that's exactly what Congress did:

> [I]f the applicable limitations period for [a CERCLA] action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1); see also CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2188 (2014) ("[Section 9658] by its terms preempts [state] statutes of limitations applicable to state-law tort actions in certain circumstances."). If Congress thought state statutes of limitations "posed an obstacle to its objectives" in enacting the ICCTA, it could have simply preempted them. See Wyeth, 555 U.S. at 574. But while Congress did precisely that in section 9658, it did not do so here. See id.

Instead of relying on the ICCTA's text, then, Kennedy and Hemlock turn to a House of Representatives Report from the passage of the ICCTA. That report does note the importance of "Federal commercial rules established to ensure that all interstate transportation is subject to the same rules and procedures." H.R. Rep. No. 104-311, at 85 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 793, 797. This language, though, refers to the Department of Transportation's ("DOT") responsibility to "oversee and maintain" certain "rules *for operation*" such as "leasing rules, uniform cargo loss and damage rules, rules for shipper payment, and perfecting security interest," id. (emphasis added)—that is, the type of rules the agency enforces. Statutes of limitations, by contrast, are *litigation* rules enforced by courts, not by the DOT. And, the report characterizes these rules as requiring "very little effort or activity" to enforce, id.—which would

6

not be the case if the DOT were required to monitor an abundance of state breach of contract suits and make statute of limitations determinations on each one.

Kennedy and Hemlock therefore have not persuaded us that Congress intended to dictate a national statute of limitations.

B. *State collection actions are unlikely candidates for federal regulation because there is no uniformity vital to national interests.*

Though neither the text nor the legislative history of section 14705(a) persuades us that state limitations periods are preempted, conflict preemption can apply if the state's method is disruptive to Congress's system. Arizona, 132 S. Ct. at 2505.

In Arizona, for example, a state law making it a misdemeanor for an unauthorized alien to apply for or perform work was preempted even though it shared a common purpose with federal law: to deter unlawful employment. Id. at 2494, 2505. By contrast, a California law survived preemption when it governed the maturity of avocados based solely on oil content while the federal government governed the maturity of avocados based on picking dates, sizes, and weights. Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 133, 139 (1963). While Arizona involved immigration and foreign relations—areas of intense federal concern, 132 S. Ct. at 2498–2500— the maturity of avocados in Florida Lime "seem[ed] to be an inherently unlikely candidate for exclusive federal regulation" and was not "a subject demanding exclusive federal regulation in order to achieve uniformity vital to national interests," 373 U.S. at 143–44.

This contract collection case is far more like Florida Lime than Arizona. As discussed below, Congress has actually removed its prior exclusive federal regulation from contract actions related to interstate transport. In light of this deregulation, Kennedy and Hemlock have not met their burden to overcome the presumption against preemption. Indeed, two particular facets of the ICCTA show that contract collection actions represent "an unlikely candidate for exclusive federal regulation" and do not "demand[] exclusive federal regulation." See Fla. Lime, 373 U.S. at 143–44.

1. The ICCTA removed the federal cause of action for breach of contract suits for unpaid freight charges.

Interstate transportation used to be "among the most pervasive and comprehensive of federal regulatory schemes." Kalo Brick & Tile Co., 450 U.S. at 318. Before the ICCTA

deregulated the trucking industry, for example, the Interstate Commerce Act ("ICA")—the ICCTA's predecessor—required motor carriers to file a tariff with the Interstate Commerce Commission ("ICC") and charge all shippers the tariffed rate. Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., 734 F.3d 296, 302 (4th Cir. 2013). But the ICCTA voided nearly all of these tariffs, instead allowing private contracts with shippers. Id. at 302–03 (citing 49 U.S.C. § 14101(b)). While the ICA provided a cause of action to recover unpaid charges, id. at 302 (citing Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 534 (1983)), the ICCTA did not, id. at 305 (holding the ICCTA does "not provide motor carriers with a federal cause of action when they sue a shipper for unpaid freight charges under a private contract"). Put simply, the ICCTA "does not provide either the motor carrier or the shipper with a federal statutory right to enforce in a routine breach of contract claim." Id.

This deregulation cuts strongly against Kennedy and Hemlock's efforts to overcome the presumption against preemption. We simply cannot "draw from the text, structure, and history" of the ICCTA that Indiana's statute of limitations "is an obstacle to the regulatory system Congress chose," when that regulatory system relies entirely on state authority and state causes of action. See Arizona, 132 S. Ct. at 2505. For Congress to impose section 14705(a)'s statute of limitations on purely state causes of action, it must show its "clear and manifest purpose" to do so. See CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). But while it could have made that purpose clear in the ICCTA, it did not.

Indeed, the United States Supreme Court relied on Congress's similar deference to state authority in a recent preemption case—CTS Corp. v. Waldburger, 134 S. Ct. 2175. There, the Court held that even when, as discussed above, Congress expressly preempted state statutes of *limitations*, it did not preempt state statutes of *repose* through conflict preemption. Id. at 2188. The Court reasoned that Congress left intact much state authority, including power over causes of action, scope of liability, burdens of proof, and rules of evidence. Id. So, it was not shown "that in light of Congress's decision to leave those many areas of state law untouched, statutes of repose pose an unacceptable obstacle to the attainment of [the statute's] purposes." Id. Likewise here, Congress eliminated federal subject matter jurisdiction over collection actions like this one, leaving them solely to state authority through state causes of action. See Gaines Motor Lines, 734

8

F.3d at 306–07. Waldburger, then, confirms our conclusion that Kennedy and Hemlock have not overcome the presumption against preemption.

   2. Breach of contract collection cases do not demand exclusive federal regulation merely because they involve interstate transportation.

"The case for federal preemption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." Wyeth, 555 U.S. at 575 (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 166–67 (1989)). And here, despite their relation to interstate transportation—admittedly a field of federal interest— these breach of contract collection cases rely completely on the operation of state law.

To be sure, contract disputes related to interstate transportation used to be a field of "federal interest." Congress began regulating interstate transportation in 1887 with the creation of the ICC—the first independent federal agency. Paul Stephen Dempsey, Rate Regulation and Antitrust Immunity in Transportation: The Genesis and Evolution of This Endangered Species, 32 Am. U. L. Rev. 335, 336 (1983). The ICC's original purpose was to "protect the public from the monopolistic abuses of the railroads," but that purpose shifted in the mid-1900s to "protect[ing] the transportation industry from the deleterious consequences of unrestrained competition." Id. at 337. Then, after 1975, the ICC reversed course again, decreasing federal regulation and working to stimulate competition. Id. This ultimately led to the demise of the ICC in 1995 through the ICCTA. Maureen E. Eldredge, Who's Driving the Train? Railroad Regulation and Local Control, 75 U. Colo. L. Rev. 549, 550–51 (2004). The ICCTA's primary purpose "was to ensure the economic viability of the rail and trucking industries by eliminating federal economic regulation." Id. at 550.

Today, then, Congress has "indicated its awareness of the operation of state law" within many areas of interstate transportation. See Wyeth, 555 U.S. at 575. Relevant here, Congress turned over contract collection actions to the operation of state law in the ICCTA—reflecting its "goal of reducing federal involvement in motor carriers' private contracts." Gaines Motor Lines, 734 F.3d at 304. This elimination of federal economic regulation shows Congress's "awareness of the operation of state law in a field of federal interest," Wyeth, 555 U.S. at 575, because Congress retained some federal regulation in the interstate transportation field but left these collection cases

to state law. In so doing, Congress demonstrated there is no need for exclusive federal regulation and decided to "tolerate whatever tension" exists between state and federal law. See id.

Because Congress created this coexisting system of state and federal regulations for interstate transportation, Indiana's statute of limitations is not preempted. In the end, "preemption will not lie unless it is the clear and manifest purpose of Congress." Easterwood, 507 U.S. at 664 (quoting Rice, 331 U.S. at 230). Kennedy and Hemlock have not shown that clear and manifest purpose and, therefore, fail to overcome the presumption against preemption.

### III.   Other Jurisdictions Provide Little Guidance on Preemption.

Few jurisdictions have addressed federal preemption of state statutes of limitations. The hodgepodge of decisions provides little guidance and does not change the conclusion that Congress did not preempt state statutes of limitations here.

Three opinions cited by Kennedy and Hemlock simply conclude, without supporting analysis, that the ICCTA's eighteen-month statute of limitations preempts longer state ones. Emmert Indus. Corp. v. Artisan Assocs., Inc., 497 F.3d 982, 989–90 (9th Cir. 2007); Arctic Express, Inc. v. Del Monte Fresh Produce NA, Inc., 366 B.R. 786, 792–93 n.2 (S.D. Ohio 2007); Exel Transp. Servs., Inc. v. Sigma Vita, Inc., 654 S.E.2d 665, 668–69 (Ga. Ct. App. 2007). And most of the other decisions Kennedy and Hemlock cite merely apply the federal eighteen-month statute of limitations, without addressing this preemption issue at all.[3] Without analysis on this preemption issue, these opinions provide no guidance.

A few opinions, however, go the other way—applying state statutes of limitations instead of shorter federal ones, but still without addressing statute of limitations preemption. See Learning Links, Inc. v. United Parcel Serv. of Am., Inc., No. 03 Civ. 7902(DAB), 2006 WL 785274, at *5 (S.D.N.Y. Mar. 27, 2006) (unpublished); Owner-Operators Indep. Drivers Ass'n, Inc. v.

---

[3] See CGH Transp., Inc. v. Quebecor World, Inc., No. 06-6399, 261 F. App'x 817, 821 (6th Cir. Jan. 8, 2008) (unpublished); La. Transp. v. Cowan Sys., LLC, No. 11-3435 (CCC), 2012 WL 1664120, at *3 (D.N.J. May 10, 2012) (unpublished); Smith Bros. Trucking v. Baker Truck Brokerage Inc., No. 1:07-CV-623, 2008 WL 4681641, at *3 (M.D.N.C. Oct. 21, 2008) (unpublished); B&J Transp., Inc. v. Swift & Co., No. 06-39-B-W, 2006 WL 3300392, at *3 (D. Me. Nov. 8, 2006) (unpublished); United Traffic Consultants, Inc. v. Gordon Trucking, Inc., No. 02-328-JE, 2003 WL 21397697, at *3 (D. Or. Mar. 25, 2003) (unpublished); C.H. Robinson Co. v. Paris & Sons, Inc., 180 F. Supp. 2d 1002, 1007–08 (N.D. Iowa 2001); Martin Moving and Storage, Inc. v. Baker, No. 3:97CV-690-S, 1999 WL 33756649, at *1 (W.D. Ky. Mar. 4, 1999) (unpublished); Adv. Warehouse & Distribution Servs., Inc. v. Caliber Logistics Healthcare, Inc., No. 3-97-CV-3205-BD, 1998 WL 907011, at *2–3 (N.D. Tex. Dec. 18, 1998) (unpublished).

Mayflower Transit, Inc., No. IP98-457-C B/S, IP98-458-C B/S, 2004 WL 6242347 at *5–6 (S.D. Ind. Dec. 14, 2004) (unpublished); Steve Marchionda & Assocs. v. Weyerhauser Co., 11 F. Supp. 2d 268, 270–71 (W.D.N.Y. 1998). These inconsistent cases cannot carry Kennedy and Hemlock's burden to show preemption and do not replace or change our own preemption analysis.

Moreover, Congress frequently leaves state statutes of limitations intact when enacting federal limitations periods—as four federal circuit courts of appeals have recognized in upholding state statutes of limitations in the face of shorter federal ones. The Ninth Circuit recently held that the Interstate Land Sales Full Disclosure Act's three-year statute of repose did not preempt California's four-year statute of limitations. Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1178–80 (9th Cir. 2016). Likewise, the Fifth Circuit held that the two-year statute of limitations in the Federal Communications Act did not preempt Texas's four-year limitations period. Castro v. Collecto, Inc., 634 F.3d 779, 787 (5th Cir. 2011). Next, the Eleventh Circuit held that the Fair Debt Collection Practices Act's one-year statute of limitations did not preempt Florida's four-year statute of limitations. Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1130 (11th Cir. 2004). And, finally, the Sixth Circuit held that the Clayton Act's four-year statute of limitations did not preempt an Ohio law providing that *no statute of limitations* would bar certain claims. Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1482 (6th Cir. 1988).

While these cases do not involve ICCTA's statute of limitations—and therefore provide limited guidance—they do show that Congress does not always preempt state law when enacting a federal statute of limitations. Because of these cases, Indiana is hardly an outlier in holding that the ICCTA's statute of limitations does not preempt Indiana's limitations period.[4]

### Conclusion

The ICCTA's eighteen-month statute of limitations does not preempt Indiana's ten-year statute of limitations governing breach of contract claims. Congress's purpose was not to preempt state statutes of limitations, and Indiana's statute of limitations does not do major damage to the ICCTA's deregulatory purpose. Kennedy and Hemlock, therefore, have not carried their burden to establish preemption. We affirm the trial court.

Rucker, David, Massa, and Slaughter, JJ., concur.

---

[4] Because we find that Indiana's statute of limitations is not preempted, we need not address the parties' equitable estoppel arguments.