


FILED

Sep 24 2018, 12:32 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-IF-193

## State of Indiana
*Appellant (Plaintiff)*

—v—

## Norfolk Southern Railway Company
*Appellee (Defendant)*

---

Argued: May 17, 2018 | Decided: September 24, 2018

Appeal from the Allen Superior Court, Nos. 02D04-1505-IF-3082, -3084, -3251, -3255, -3263, -3362, -1506-IF-6383, -1508-IF-9742, -1512-IF-15577; 02D05-1503-IF-2039, -1505-IF-3070, -3248, -3264, -3312; 02D06-1504-IF-2988, -1505-IF-3071, -3183, -3246, -3262, -3363, -1506-IF-6379, -1508-IF-9744, -1511-IF-13718

The Honorable Wendy W. Davis, Judge
The Honorable Frances C. Gull, Judge
The Honorable John F. Surbeck, Jr., Judge
The Honorable David M. Zent, Magistrate

On Petition to Transfer from the Indiana Court of Appeals,
No. 02A03-1607-IF-1524

---

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Indiana—The Crossroads of America[1]—is a railroad capital. Statewide, dozens of railroad companies run trains on more than four thousand miles of track. Roads intersect those tracks, creating 5,693 public railroad–highway grade crossings. That's one for every seventeen public-roadway miles—the highest concentration in the country.[2]

To aid public travel, the State bars railroads from blocking those crossings for more than ten minutes, except in situations outside the railroads' control. Violations carry minimum $200 fines. After 23 citations, Norfolk Southern challenged the State's regulation as preempted by federal law.

This issue of first impression in Indiana raises two questions. Does the standard presumption against preemption apply in the railroad-crossing context? And to what extent has Congress kept the tracks clear from state regulation of rail transportation?

We hold that while the longstanding presumption against preemption applies here, Indiana's blocked-crossing statute is a remedy that directly regulates rail transportation and is thus expressly preempted by the Interstate Commerce Commission Termination Act.

## Facts and Procedural History

Indiana's blocked-crossing statute bars railroads from blocking railroad–highway grade crossings[3] for more than ten minutes, except in circumstances outside the railroads' control. Ind. Code § 8-6-7.5-1 (2018).

---

[1] Indiana's state motto. Resolution of Mar. 2, 1937, ch. 312, 1937 Ind. Acts 1389.

[2] Indiana Dep't of Transportation, *Indiana State Rail Plan*, 25, 32, 69–70 (Oct. 2017).

[3] "Grade crossings" here refers to highways and railroads intersecting on the same level (that is, "at grade") instead of one passing over the other via, for example, a tunnel or bridge. *Cf.* Ind. Code § 8-6-7.7-1 (2018).

Violations are Class C infractions and carry a minimum $200 fine. I.C. § 8-6-7.5-3(a).

Between December 2014 and December 2015, Norfolk Southern collected 23 blocked-crossing citations for violations near its Allen County trainyard. Norfolk Southern moved for summary judgment on the citations, arguing that the Interstate Commerce Commission Termination Act ("ICCTA") and the Federal Railroad Safety Act ("FRSA") expressly preempt Indiana's blocked-crossing statute. It also designated evidence—undisputed by the State—that it faced a heavy compliance burden at grade crossings near the trainyard.

Based on that evidence, the trial court found that train-switching maneuvers, track congestion, and mechanical defects can all cause traffic blockages lasting more than ten minutes. It also found that, to shorten blockages, Norfolk Southern would have to run trains faster, run shorter trains, or "cut" trains into segments—an onerous process that requires more than ten minutes of reassembly and brake tests. The court then granted summary judgment for Norfolk Southern on all 23 citations, finding that both the ICCTA and the FRSA preempt the blocked-crossing statute.

The State appealed, arguing that neither federal act preempts Indiana's blocked-crossing statute, especially given the presumption against preemption. The Court of Appeals agreed, reversing the trial court because neither the ICCTA nor the FRSA explicitly list blocked-crossing statutes as preempted. *State v. Norfolk S. Ry.*, 84 N.E.3d 1230, 1236, 1238 (Ind. Ct. App. 2017).

Norfolk Southern petitioned to transfer, which we granted, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Preemption here turns on whether federal law expressly preempts Indiana's blocked-crossing statute. *See Kennedy Tank & Mfg. Co. v. Emmert Indus. Corp.*, 67 N.E.3d 1025, 1028 (Ind. 2017). We review that issue of law,

and the trial court's grant of summary judgment, de novo. *Id.*; *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423 (Ind. 2015).

## Discussion and Decision

Congress can preempt state law expressly, with explicit preemptive text, or impliedly, "under the twin doctrines of field and conflict preemption." *KS&E Sports v. Runnels*, 72 N.E.3d 892, 905 (Ind. 2017); *see also Kennedy Tank*, 67 N.E.3d at 1028. Field preemption exists when Congress imposes "exclusive federal regulation of the area." *Kennedy Tank*, 67 N.E.3d at 1028 (quoting *Basileh v. Alghusain*, 912 N.E.2d 814, 818 (Ind. 2009)). And conflict preemption exists when compliance with both state and federal laws is "physically impossible" or when a state law does "major damage" to Congress's purpose. *Id.* at 1029.

Norfolk Southern argues only that Indiana's blocked-crossing statute is expressly preempted. The statute's current version says:

> It shall be unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad–highway grade crossing for a period in excess of ten (10) minutes, except where such train, railroad car or engine cannot be moved by reason of circumstances over which the railroad corporation has no control.

I.C. § 8-6-7.5-1. State statutes like this one are ordinarily covered by a presumption against preemption, *see Kennedy Tank*, 67 N.E.3d at 1028, but Norfolk Southern argues that the presumption does not apply here.

We disagree with Norfolk Southern and find at the outset that the presumption applies, given the State's legitimate interest in protecting the public use of grade crossings. With that presumption on board, we then address the ICCTA's express preemption provision. We conclude that because Indiana's blocked-crossing statute provides a remedy that regulates rail transportation, the ICCTA expressly preempts it.

# I. Federalism dictates that the presumption against preemption applies to the blocked-crossing statute.

As a concept "central to the constitutional design," federalism requires that we not find preemption easily. *Kennedy Tank*, 67 N.E.3d at 1028 (quoting *Arizona v. United States*, 567 U.S. 387, 398 (2012)). So we carefully consider Norfolk Southern's challenge to the long-settled presumption against preemption, *see id.*, examining the federal and state interests in railroad-crossing regulation.

Since the presumption is animated by federalism, it "is not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). This presumption exception is strict, applying when "Congress has legislated in the field from the earliest days of the Republic, creating an extensive federal statutory and regulatory scheme." *Id.* (finding the presumption inapplicable in the maritime trade context).

So does the presumption against preemption apply in this railroad-crossing case, or does *Locke*'s exception derail it?

To start, we agree with Norfolk Southern that Congress comprehensively regulated the railroad industry dating back to the late nineteenth century. *See United Transp. Union v. Long Island R.R.*, 455 U.S. 678, 687 (1982). But even then, regulating railroad **crossings** for the public welfare remained "one of the most obvious cases of the [states'] police power." *Erie R.R. v. Bd. of Pub. Util. Comm'rs*, 254 U.S. 394, 410 (1921).

Indiana has exercised that police power for over 150 years. In 1865, the legislature made it a misdemeanor to leave a train "standing across any public highway or street, to the hindrance of travel, for a longer time than ten minutes." Act of Dec. 20, 1865, ch. XXIV, 1865 Ind. Acts 119. Over decades, the General Assembly nuanced the regulation—adjusting the blockage time limit and the fine amount, and eventually regulating blockages by freight cars and passenger cars separately. *See* Ind. Rev. Stat. § 2176 (1896); Burns' Ind. Stat. Ann. § 2672 (1914); Burns' Ind. Stat. Ann. §§ 2903, 2904 (1926); Burns' Ind. Stat. Ann. §§ 10-3904, 10-3905 (1933); Burns' Ind. Stat. Ann. §§ 10-3904, 10-3905 (Repl. 1956). Then in 1972, the

legislature passed the current statute, which has remained unamended. *See* P.L. 63-1972 (codified at I.C. § 8-6-7.5-1). Across their nuances, these statutes have aimed "to prevent delay to traffic using our avenues of travel at points where railroads intersect such avenues." *Pa. R.R. v. Huss*, 96 Ind. App. 71, 77, 180 N.E. 919, 921, (1932) (in banc), *trans. denied*. The State thus properly notes that Indiana has long regulated railroad crossings with a blocked-crossing statute.

Norfolk Southern responds that even if the blocked-crossing statute has protected the public interest for a long time, it remains a direct regulation of railroad operations. This is a fair point—and one that headlines our preemption analysis below—but it does not undermine the presumption against preemption.

Rather, the presumption covers "subject[s] traditionally governed by state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663–64 (1993). So in *Easterwood*, the Supreme Court of the United States applied the presumption in a challenge to a railroad's state-law tort duties to maintain both reasonable train speeds and proper warning devices at crossings. *Id.* at 661, 663–64, 668. Those duties are no less regulations of rail operations than the blocked-crossing statute is here. Yet the presumption still applied.

And because states have long regulated railroad crossings, *Locke*'s no-federalism-interest exception does not derail the presumption here. Indeed, *Easterwood* applied the presumption to a railroad's tort duties at railroad crossings, confirming that these crossings have been "traditionally governed by state law." *See id.* at 664, 668–70 (accepting that "[j]urisdiction over railroad–highway crossings resides almost exclusively in the States"). And Indiana's history proves its longstanding State concern with blocked crossings.

Thus, under *Easterwood*, "[o]ur analysis begins with a presumption against preemption," *Kennedy Tank*, 67 N.E.3d at 1028.

## II. The ICCTA, by its plain language, preempts Indiana's blocked-crossing statute.

When Congress used the ICCTA to largely deregulate the rail industry, it included an express preemption provision to limit state involvement. That provision preempts state remedies that manage or govern rail transportation. We find that Indiana's blocked-crossing statute is such a remedy for two reasons. First, because its effects substantially interfere with railroad operations. And second, because ICCTA preemption is not limited to explicitly economic regulations.

### A. The ICCTA's history informs its express preemption provision.

Over time, significant shifts have transformed federal regulatory control over interstate commerce. These changes provide essential context for the ICCTA's express preemption provision.

Federal regulation of interstate commerce began in 1887 when Congress established the Interstate Commerce Commission, the first independent federal agency. *Kennedy Tank*, 67 N.E.3d at 1032. The Commission's "original purpose was to 'protect the public from the monopolistic abuses of the railroads.'" *Id.* (quoting Paul Stephen Dempsey, *Rate Regulation and Antitrust Immunity in Transportation: The Genesis and Evolution of This Endangered Species*, 32 Am. U. L. Rev. 335, 337 (1983)). Its regulatory reach grew in the 1900s, resulting in a comprehensive scheme that managed rates and some services in the surface transportation industries. *See generally* Dempsey, *supra*.

More recently, though, Congress came to view this scheme as an "onerous regulatory burden" that hindered railroads' economic competitiveness. *Friends of Eel River v. N. Coast R.R. Auth.*, 399 P.3d 37, 55–57 (Cal. 2017) (recounting the ICCTA's purpose and history). So Congress began the deregulatory process, culminating with the ICCTA in 1995. *Id.* at 56. The ICCTA's explicit policies for rail transportation include "minimiz[ing] the need for Federal regulatory control over the rail transportation system" and ensuring "a sound rail transportation system

with effective competition." 49 U.S.C. § 10101 (2012). Put simply, the ICCTA "significantly **reduced** federal regulation of interstate commerce." *Kennedy Tank*, 67 N.E.3d at 1029–30.

While Congress largely deregulated the railroad industry, it did not invite states to step in and fill the void. *See Eel River*, 399 P.3d at 55–56; *cf. Kennedy Tank*, 67 N.E.3d at 1031–33 (explaining the states' role in regulating the **trucking** industry under the ICCTA). Instead, Congress retained federal control over a few areas—such as routes, rates, and rail construction and abandonment—and gave exclusive jurisdiction over them to the newly created Surface Transportation Board ("STB"). 49 U.S.C. § 10501; *Eel River*, 399 P.3d at 53–54. Then, to limit states' role in rail regulation, Congress nestled an express preemption provision into its enumeration of the STB's jurisdiction. *See City of Ozark v. Union Pac. R.R.*, 843 F.3d 1167, 1170 (8th Cir. 2016). That provision says that the STB's jurisdiction over railroad operations "is exclusive" and that, unless otherwise provided, ICCTA remedies "are exclusive and preempt" state remedies:

> (b) The jurisdiction of the [STB] over—
>     (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>     (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
> is exclusive. **Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law**.

49 U.S.C. § 10501(b) (emphasis added).

Norfolk Southern argues that this provision preempts Indiana's blocked-crossing statute. Since it argues only express—not field or conflict—preemption, our task is statutory interpretation. *See Easterwood*, 507 U.S. at 664. The ticket to our decision is thus the preemption provision's language. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016). If the words are ambiguous, the presumption against preemption imposes "a duty to accept the reading that disfavors pre-emption." *Bates v. Dow AgroSciences LLC*, 544 U.S. 431, 449 (2005). But if those words are clear, "we do not invoke any presumption," and they alone keep us on track. *Puerto Rico*, 136 S. Ct. at 1946.

The ICCTA's preemption provision is two sentences. *See* 49 U.S.C. § 10501(b); *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 805 (5th Cir. 2011). The first makes STB jurisdiction exclusive. *Id.* And the second makes ICCTA remedies exclusive. *Id.* We focus on the second sentence as the clearer statement of Congress's preemptive intent—it explicitly says not only that federal remedies are exclusive, but also that they "preempt the remedies provided under . . . State law." 49 U.S.C. § 10501(b); *see Franks Inv. Co. v. Union Pac. R.R.*, 593 F.3d 404, 410 (5th Cir. 2010) (en banc). *But see generally Fayus Enters. v. BNSF Ry.*, 602 F.3d 444, 448–50 (D.C. Cir. 2010) (explaining the preemption provision's history and taking a broader view of exclusive-jurisdiction preemption).

## B. The ICCTA broadly preempts state statutes that manage or govern rail transportation but leaves routine crossing matters to the states.

The preemption provision's second sentence specifies which state remedies are preempted: those "**with respect to regulation of rail transportation**." 49 U.S.C. § 10501(b) (emphasis added). We thus consider what the phrase "regulation of rail transportation" encompasses—and what it does not.

Contrary to the State's argument, the phrase does not encompass only state remedies that are redundant of an ICCTA remedy. Instead, the preemption provision's clear text makes ICCTA remedies "exclusive." 49

U.S.C. § 10501(b). So it bars any state remedy—whether redundant, supplementary, or distinct—that regulates rail transportation. *See Eel River*, 399 P.3d at 43 ("Where the [ICCTA] has deregulated, the states are not free to fill regulatory voids."); *Union Pac. R.R. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011) (recognizing Congress's "broad and sweeping" intent to preempt state regulation of rail transportation).

But the preemption provision also does not encompass **all** state actions affecting railroad crossings. In fact, while "[s]ubstantial interference with railroad operations will be preempted; routine crossing disputes will not." *Franks*, 593 F.3d at 413. Routine crossing requirements that are often too tangential to "regulate" rail transportation include keeping crossings in service, *id.* at 409, closing private crossings, *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 105 (2d Cir. 2009), and paying for pedestrian crossings and sidewalks, *Adrian & Blissfield R.R. v. Village of Blissfield*, 550 F.3d 533, 541 (6th Cir. 2008).

Many state actions, though, do regulate rail transportation and are thus preempted. Courts are unanimous that the test is whether a statute has "the effect of 'managing' or 'governing' rail transportation." *Delaware v. Surface Transp. Bd.*, 859 F.3d 16, 19 (D.C. Cir. 2017) (quoting *Fla. E. Coast Ry. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)) (collecting cases); *Or. Coast Scenic R.R. v. Or. Dep't of State Lands*, 841 F.3d 1069, 1077 (9th Cir. 2016) (quoting *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010)); *Blissfield*, 550 F.3d at 539; *City of Girard v. Youngstown Belt Ry.*, 979 N.E.2d 1273, 1281 (Ohio 2012) (collecting cases).

With this test in hand, it's full speed ahead to the ICCTA's application here.

## C. The ICCTA expressly preempts Indiana's blocked-crossing statute.

Indiana's blocked-crossing statute says:

It shall be unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad–highway grade crossing for a period in excess of ten (10) minutes, except where such train, railroad car or engine cannot be moved by reason of circumstances over which the railroad corporation has no control.

I.C. § 8-6-7.5-1. Again, the test for ICCTA preemption is whether this statute has "the effect of 'managing' or 'governing' rail transportation."

The broad definition of "transportation" in 49 U.S.C. section 10102(9) sweeps up "virtually any property, track, or vehicle 'related to the movement of passengers or property, or both, by rail.'" *Allied Erecting & Dismantling Co. v. Surface Transp. Bd.*, 835 F.3d 548, 550 (6th Cir. 2016). So in limiting how long a "railroad corporation" can block "railroad–highway grade crossing[s]," Indiana Code section 8-6-7.5-1 undisputedly affects rail transportation.

But does that amount to "regulation" under the ICCTA's preemption provision? That is, does it rise to the level of "'managing' or 'governing'" rail transportation? *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218–19 (4th Cir. 2009) (expounding the preemption provision's focus on "regulation"). The State argues that it does not, because the blocked-crossing statute merely regulates peripheral concerns rather than a railroad's economic choices. We disagree.

### 1. Indiana's blocked-crossing statute regulates railroads.

The statute's bar on blocking grade crossings for more than ten minutes dictates key operational choices. Railroads cannot run trains too slowly or make them too long, lest they take more than ten minutes to clear a crossing. *See CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812, 817 (6th Cir. 2002) ("[T]he amount of time a moving train spends at a grade crossing is mathematically a function of the length of the train and the speed at which the train is traveling."). Railroads also cannot schedule trains or operate trainyards in a way that forces them to stop trains for

more than ten minutes at a crossing to repair problems, perform safety checks, or wait for tracks to clear.

The facts here, as the trial court ably found, provide examples. Norfolk Southern's switching operations take more than ten minutes to safely complete. Mechanical defects and trainyard congestion can also cause violations. So Norfolk Southern would have to run faster or shorter trains, or "cut" trains into segments, to comply with the blocked-crossing statute. And if Norfolk Southern "cut" its trains to open the crossings, reassembly and mandatory brake tests would take more than ten minutes. All this means that Norfolk Southern—just to **try** to comply with the blocked-crossing statute—would have to change several key railroad-operation choices.

Nor does the statute's exception for blockages outside the railroads' control provide a light at the end of the tunnel. The statute's duty to clear crossings within ten minutes means that if there is any way for the railroad to comply—no matter how onerous—then it must do so. *See Norfolk & W. Ry. v. State*, 180 Ind. App. 185, 188, 387 N.E.2d 1343, 1344, (1979), *trans. denied*. So, for example, "if a crossing can be cleared by separating the cars, such must be done." *Id.*

In sum, as the en banc Fifth Circuit recognized, "[r]egulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains." *Franks*, 593 F.3d at 411 (quoting *Friberg v. Kan. City S. Ry.*, 267 F.3d 439, 443 (5th Cir. 2001)). So "mandat[ing] when trains can use tracks and stop on them is attempting to manage or govern rail transportation in a direct way." *Id.*

Since the statute regulates rail transportation, we turn to the State's next argument—that the ICCTA preempts only economic regulations.

## 2. ICCTA preemption is not limited to explicitly economic regulations.

Despite the blocked-crossing statute's direct regulatory effect, the State argues that the statute is not preempted because the ICCTA's core concern is economic regulation. Courts have struggled to find Congress's intent on

that point. *See, e.g., Elam*, 635 F.3d at 806 ("The preemptive effect of § 10501(b) may not be limited to state economic regulation, but economic regulation is at the core of ICCTA preemption."); *Blissfield*, 550 F.3d at 539 ("[T]he Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive."); *N.Y. Susquehanna & W. Ry. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) ("[T]he [ICCTA] does not preempt only explicit economic regulation."). But we need not divine Congress's intent because the State's argument cannot prevail for two reasons.

First, the line between economic and non-economic regulations "begins to blur" in many cases, including this one. *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1031 (9th Cir. 1998). Environmental, traffic, or safety regulations "amount to 'economic regulation,'" *Eel River*, 399 P.3d at 62, when they stymie railroads' key operational choices—choices they would otherwise make for economic reasons. *See id.* at 62–64. So the blocked-crossing statute's effects on train length, speed, and scheduling are indistinguishable from economic regulations. *See Friberg*, 267 F.3d at 444.

Second—and more fundamentally—even if an economic focus were in Congress's mind, it is not in the ICCTA's text. *See* 49 U.S.C. § 10501(b). Plain text, when we have it, "begins and ends our analysis." *Puerto Rico*, 136 S. Ct. at 1946. Here the preemption provision plainly does not limit preemption to economic regulations. 49 U.S.C. § 10501(b); *see Friberg*, 267 F.3d at 444 (noting "the all-encompassing language of the ICCTA's preemption clause").

So since Indiana's blocked-crossing statute is a remedy that directly regulates rail operations, the ICCTA categorically preempts it. *See Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 894–95 (7th Cir. 2017) ("Categorical preemption occurs when a state . . . action is preempted on its face," including when states "deny a railroad the ability to conduct

some part of its operations.").[4] This holding mirrors those of several other jurisdictions addressing blocked-crossing preemption under the ICCTA. *See Elam*, 635 F.3d 796; *Friberg*, 267 F.3d 439; *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836 (E.D. Ky. 2004); *People v. Burlington N. Santa Fe R.R.*, 209 Cal. App. 4th 1513 (2012); *Burlington N. & Santa Fe Ry. v. Dep't of Transp.*, 206 P.3d 261 (Or. Ct. App. 2009); *City of Seattle v. Burlington N. R.R.*, 41 P.3d 1169 (Wash. 2002) (en banc).

Despite preemption, the State may have federal recourse for blocked crossings. The STB's Rail Customer and Public Assistance Program "solves problems in ways ranging from a simple answer to a telephone inquiry to lengthy informal mediation efforts."[5] In 2017, that program addressed 32 issues related to railroad blocked crossings.[6] The STB has also addressed ongoing blocked-crossing disputes with formal decisions.[7]

Since the ICCTA preempts the blocked-crossing statute, it is the end of the line—we need not address preemption under the FRSA. The trial court is affirmed.

---

[4] For this reason, we need not get sidetracked by incidental burdens on railroad operations, s*ee Delaware*, 859 F.3d at 18 ("[T]he ICCTA preempts 'all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.'" (quoting *N.Y. Susquehanna*, 500 F.3d at 252)), or as-applied preemption, *see Wedemeyer*, 850 F.3d at 895.

[5] Surface Transportation Board, *Rail Customer and Public Assistance*, https://www.stb.gov/stb/rail/consumer_asst.html.

[6] Surface Transportation Board, *RCPA 2017 Full Year Statistics by Issue and Region*, https://www.stb.gov/stb/docs/ConsumerAssistance/Full%20Year%20RCPA%202017%20 Cases%20by%20Category-Region.pdf.

[7] *E.g.*, *CSX Transp. Inc.*, STB Docket No. FD 35522, June 22, 2016, https://www.stb.gov/decisions/readingroom.nsf/9855c1fb354da09b85257f1f000b5f79/ d3c0b4ed40a3bad585257fda0056d1e0?OpenDocument; *Canadian Nat'l Ry.*, STB Decision No. 26, Docket No. FD 35087, Dec. 17, 2010, https://www.stb.gov/decisions/readingroom.nsf/9855c1fb354da09b85257f1f000b5f79/ b956b01d3225252a852578000050aee5?OpenDocument.

# Conclusion

While the presumption against preemption applies in this railroad-crossing context, the ICCTA's preemption provision unambiguously preempts Indiana's blocked-crossing statute. We thus affirm summary judgment for Norfolk Southern.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Andrew A. Kobe
Larry D. Allen
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Raymond A. Atkins
Hanna M. Chouest
Sidley Austin LLP
Washington, DC

Bryan H. Babb
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana

John C. Duffey
Heather L. Emenhiser
Stuart & Branigin LLP
Lafayette, Indiana

ATTORNEYS FOR AMICUS CURIAE
THE ASSOCIATION OF AMERICAN RAILROADS
Harold Abrahamson
Jonathan E. Halm
Abrahamson, Reed & Bilse
Munster, Indiana

ATTORNEYS FOR AMICI CURIAE
FRANCIS P. MULVEY AND CHARLES D. NOTTINGHAM
Stephen J. Peters
David I. Rubin
Plunkett Cooney, P.C.
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
INDIANA RAIL ROAD COMPANY ET AL.
Karl L. Mulvaney
Margaret M. Christensen
Nana Quay-Smith
Bingham Greenebaum Doll LLP
Indianapolis, Indiana