[Cite as *State v. CSX Transp., Inc.*, 2020-Ohio-2665.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLANT,          CASE NO.  14-19-07

     v.

CSX TRANSPORTATION, INC.,          O P I N I O N

     DEFENDANT-APPELLEE.

STATE OF OHIO,

     PLAINTIFF-APPELLANT,          CASE NO.  14-19-08

     v.

CSX TRANSPORTATION, INC.,          O P I N I O N

     DEFENDANT-APPELLEE.

STATE OF OHIO,

     PLAINTIFF-APPELLANT,          CASE NO.  14-19-09

     v.

CSX TRANSPORTATION, INC.,          O P I N I O N

     DEFENDANT-APPELLEE.

Case Nos. 14-19-07, 08, 09, 10, 11

STATE OF OHIO,

     PLAINTIFF-APPELLANT,         CASE NO. 14-19-10

     v.

CSX TRANSPORTATION, INC.,         O P I N I O N

     DEFENDANT-APPELLEE.

STATE OF OHIO,

     PLAINTIFF-APPELLANT,         CASE NO. 14-19-11

     v.

CSX TRANSPORTATION, INC.,         O P I N I O N

     DEFENDANT-APPELLEE.

**Appeals from Marysville Municipal Court**
**Trial Court Nos. 18-CRB-0440, 18-CRB-1048, 18-CRB-0924,**
**18-CRB-0606 and 18-CRB-0509**

**Judgments Reversed and Causes Remanded**

**Date of Decision:   April 27, 2020**

APPEARANCES:

    *Rick Rodger* **for Appellant**
    *Andrew E. Tauber and Terrance K. Davis* **for Appellee**
    *Benjamin M. Flowers and Shams Hirji* **for Amicus**
        **Ohio Attorney General**
    *Colleen A. Mountcastle* **for Amicus Assoc. of American Railroads**

-2-

Case Nos. 14-19-07, 08, 09, 10, 11

**SHAW, P.J.**

{¶1} Plaintiff-appellant, the State of Ohio (the "State") appeals the February 26, 2019 judgment entries of dismissal issued by the Marysville Municipal Court, which granted the motions to dismiss filed by CSX Transportation, Inc. ("CSX") regarding five separate complaints alleging CSX violated R.C. 5589.21, also known as "Ohio's blocked crossing statute." On appeal, the State challenges the trial court's determination that the Ohio statute is preempted by federal law, specifically the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101, *et seq.*

{¶2} Section 5589.21 of the Revised Code prohibits a railroad company from obstructing public roads for longer than five minutes, to the hindrance or inconvenience of travelers or a person passing along or upon such street, road, or highway, with two limited exceptions: when the obstruction is caused (1) by a continuously moving through train; or (2) by circumstances wholly beyond the control of the railroad company. R.C. 5589.21(A),(C). The statute further specifies that the prohibition "does apply to other obstructions, including without limitation those caused by stopped trains and trains engaged in switching, loading, or unloading operations." Id.

{¶3} During a six month period from May 12, 2018 to November 8, 2018, the Union County Sherriff's Office filed five citations against CSX, charging it with

violations of R.C. 5589.21(A), a misdemeanor of the first degree. *See* R.C. 5589.99(D)(stating the penalty for each violation is a $1,000 fine). The citations each indicated that CSX had stopped its train, blocking a public railroad crossing for over an hour with no mechanical issue causing the train to be stationary. The citations further indicated that CSX's conduct hindered traffic and caused inconvenience to motorists. CSX entered a not guilty plea to the charges.[1]

{¶4} CSX filed a motion to dismiss in each case arguing that the prohibition contained in R.C. 5589.21(A), specifically the prohibition of CSX's conduct of allowing its trains to remain stationary while obstructing a public railroad crossing for longer than five minutes which results in impeding automobile traffic while it services its customer, "is indefensible" because R.C. 5589.21 is preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101, *et seq*., and the Federal Railroad Safety Authorization Act ("FRSA"), 49 U.S.C., § 20101, *et seq*. (Doc. No. 33 at 2).

{¶5} CSX attached to its motions the affidavits of Blair Johnson, the Assistant Superintendent of the Midwest Region of CSX, who oversees operating personnel responsible for moving trains in and out of the Honda plant located near

---

[1] Even though these cases were filed as five separate cases at the trial court level, they were consolidated for consideration by the trial court and for purposes of appeal. For ease of discussion, we will use the docketing pagination in case number 18 CRB 00400, appellate number 14-19-07, when making reference to the record.

Marysville, Ohio.[2] Johnson acknowledged that CSX's trains consistently obstruct public railroad crossings while loading and unloading goods and supplies and/or entering and exiting the automotive plant. Johnson averred that CSX was engaged in such activities when it received three of the citations at issue in this case. Johnson further claimed that while servicing the Honda plant in this manner "it is not possible for CSX to comply with the Ohio blocked crossing statute with respect to train speed, length and/or scheduling, the regulations of which are governed exclusively by federal law." (Doc. No. 33).

{¶6} Johnson also stated that the train involved in the citation generating case number 18CRB440 was required to pull onto a side track so that another train traveling in the opposite direction could pass on the single train line, and as a result the CSX train blocked the crossing for longer than five minutes. Johnson further explained that in case number 18CRB606 the CSX train involved was required to stop and block the crossing because another train traveling ahead of it on the same track had come to a stop due to mechanical safety issues. Thus, CSX maintained that two of the incidents underlying the citations were wholly beyond its control.

---

[2] Due to the fact that these cases were resolved by granting a motion to dismiss at the trial court level prior to any formal evidence being presented in this misdemeanor matter, our references to the affidavits and exhibits or diagrams attached to the parties' motion to dismiss and response are simply to illustrate the arguments that are characteristic of this sort of litigation without making any evaluations as to the evidentiary weight of these exhibits.

{¶7} This notwithstanding, CSX argued that the ICCTA and FRSA both contain express provisions regulating the operation of its trains which preempted any attempt by the State to dictate the length of time that CSX's trains could obstruct a public railroad crossing under R.C. 5589.21. CSX further cited to several state and federal case authorities supporting its position that the citations issued by the State for violating R.C. 5589.21 should be dismissed on federal preemption grounds.

{¶8} The State filed a response opposing CSX's motions to dismiss. The State argued that the FRSA expressly allows for state regulation in the area of railroad crossing safety as an exercise of its traditional police powers, and that the ICCTA does not expressly preempt the conduct specifically prohibited by R.C. 5589.21 because the core concern of the ICCTA is to regulate railroad carrier economics and finance rather than the railroad company's use of public railroad crossings. The State highlighted the language of R.C. 5589.20, in which the Ohio Legislature specifically expressed its intent to protect the health, safety and welfare of Ohio's citizens by enacting R.C. 5589.21 et seq., and argued that there is no unreasonable burden placed on CSX to comply with both R.C. 5589.21 and federal regulations. In support of its position that the health and safety of its citizens are of paramount concern under R.C. 5589.21(A), the State attached a diagram to its response demonstrating that at least two fire stations were severed from immediate access to their response areas when CSX obstructed the public railroad crossings.

{¶9} On February 26, 2019, the trial court issued an entry of dismissal in each case finding that Ohio's blocked crossing statute, R.C. 5589.21, is preempted by the ICCTA. Specifically, the trial court found that the ICCTA contained a provision expressly preempting R.C. 5589.21. In addition, the trial court praised the State's efforts to defend the sanctity of its exercise of traditional police powers to protect the health and safety of its citizens, but nonetheless felt obliged to follow the case authority cited by CSX in support of dismissal. Specifically, the trial court stated:

> **The brief submitted by the State herein was a commendable effort to uphold the intention of Ohio's legislature to protect the public by assuring the timely movement of emergency medical, law enforcement, and firefighter vehicles, as well as the movement of other travelers on our roadways. CSX pointedly failed to cite any Federal regulation specifically addressing the critical importance of the timely passage of emergency and law enforcement vehicles. The absence of Federal regulation does not allow for state regulation if the Federal preemption is explicit.**
>
> **Congress unambiguously and explicitly chose to preempt what is arguably common sense state regulation while making no direct provision for the safety of the public. Perhaps Congress assumed the Surface Transportation board would adopt a uniformly applied regulation to address the same issues as Ohio's blocked crossing statute. However, the only remedy available to the people of Ohio is to direct their concerns to Congress and Federal officials.**

(Doc. No. 30 at 4).

{¶10} It is from these judgment entries of dismissal that the State now appeals, asserting the following assignment of error.

-7-

**THE TRIAL COURT ERRED IN FINDING THAT OHIO REVISED CODE SECTION 5589.21 IS PRE-EMPTED BY FEDERAL LAW AND DISMISSING THE COMPLAINTS FILED WITH THE COURT.**

{¶11} In its sole assignment of error, the State argues the trial court erred in determining that the ICCTA explicitly preempts R.C. 5589.21.

*Standard of Review*

{¶12} The issue in this case presents a question of law—specifically, whether federal law preempts Ohio's blocked crossing statute, R.C. 5589.21. We review a question of law under a *de novo* standard of review without deference to the trial court's decision. *State ex rel. Yost v. Volkswagen Aktiengesellschaft*, 10 Dist. Franklin No. 19AP-7, 2019-Ohio-5084, ¶ 12, citing *Bailey v. Manor Care of Mayfield Hts.*, 8th Dist. Cuyahoga No. 99798, 2013-Ohio-4927, ¶ 12.

*Federal Preemption of State Law*

{¶13} It has "long been settled" that a preemption analysis begins with the presumption that federal statutes do not preempt state law. *Bond v. United States*, 572 U.S. 844, 858, 134 S.Ct. 2077 (2014). The presumption against preemption comes from two concepts embedded in the United States Constitution: the Supremacy Clause and federalism. *See Arizona v. United States*, 567 U.S. 387, 398, 132 S.Ct. 2492 (2012).

{¶14} Pursuant to the Supremacy Clause of the United States Constitution, the United States Congress has the power to preempt state laws. *In re Miamisburg*

*Train Derailment Litigation*, 68 Ohio St.3d 255, 259 (1994). Specifically, the Supremacy Clause provides that "the Laws of the United States * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Constitution, Article VI, cl. 2.

**{¶15}** However, federalism, which is also "central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona* at 399, 132 S.Ct. 2492, citing *Gregory v. Ashcroft*, 501 U.S. 452, 457, 111 S.Ct. 2395 (1991); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 115 S.Ct. 1842 (1995) (Kennedy, J., concurring). "[B]ecause the States are independent sovereigns in our federal system," the United States Supreme Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240 (1996). The "historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress," and therefore "a presumption exists against preemption of state police-power regulations." *Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, ¶ 27; *PNH, Inc. v. Alfa Laval Flow, Inc.*, 130 Ohio St.3d 278, 2011-Ohio-4398, ¶ 18; *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187 (2009). A traditional

exercise of the states' "police powers [is] to protect the health and safety of their citizens." *Medtronic* at 475, 116 S.Ct. 2240.

{¶16} There are three ways federal law can preempt state law: (1) where federal law expressly preempts state law (express preemption); (2) where federal law has occupied the entire field (field preemption); or (3) where there is a conflict between federal law and state law (conflict preemption). *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, ¶ 7.

{¶17} As previously mentioned, Ohio's blocked crossing statute is codified in Section 5589.21 of the Revised Code, which provides that:

> **(A)  No railroad company shall obstruct, or permit or cause to be obstructed a public street, road, or highway, by permitting a railroad car, locomotive, or other obstruction to remain upon or across it for longer than five minutes, to the hindrance or inconvenience of travelers or a person passing along or upon such street, road, or highway.**
>
> **(B)  At the end of each five minute period of obstruction of a public street, road, or highway, each railroad company shall cause such railroad car, locomotive, or other obstruction to be removed for sufficient time, not less than three minutes, to allow the passage of persons and vehicles waiting to cross.**
>
> **(C)  This section does not apply to obstruction of a public street, road, or highway by a continuously moving through train or caused by circumstances wholly beyond the control of the railroad company, but does apply to other obstructions, including without limitation those caused by stopped trains and trains engaged in switching, loading, or unloading operations.**
>
> **(D) If a railroad car, locomotive, or other obstruction is obstructing a public street, road, or highway in violation of**

**division (A) of this section and the violation occurs in the unincorporated area of one or more counties, or in one or more municipal corporations, the officers and employees of each affected county or municipal corporation may charge the railroad company with only one violation of the law arising from the same facts and circumstances and the same act.**

**(E) Upon the filing of an affidavit or complaint for violation of division (A) of this section, summons shall be issued to the railroad company pursuant to division (B) of section 2935.10 of the Revised Code, which summons shall be served on the regular ticket or freight agent of the company in the county where the offense occurred.**

*Relevant Federal Authority*

{¶18} The trial court found that R.C. 5589.21 is expressly preempted by the ICCTA. Passed by Congress in 1995, "[t]he ICCTA was enacted to encourage competitive rates for rail transportation, to minimize regulatory control, and to promote efficiency as well as public health and safety." *Girad v. Youngstown Belt Ry. Co.*, 134 Ohio St. 3d 79, 2012-Ohio-5370, ¶ 18, citing 49 U.S.C. § 10101 *et seq.* In order to achieve this end, Congress abolished the Interstate Commerce Commission and created the Surface Transportation Board ("STB"). Under the ICCTA, the STB was granted *exclusive jurisdiction* over certain aspects of interstate rail activity:

**(b) The jurisdiction of the Board over—**

> **(1) *transportation* by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating**

> **rules), practices, routes, services, and facilities of such carriers; and**
>
> *(2)* **the construction, acquisition, *operation*, abandonment, or *discontinuance of spur, industrial, team, switching, or side tracks*, or facilities, even if the tracks are located, or intended to be located, entirely in one State,**
>
> **is <u>exclusive</u>. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.**

49 U.S.C. § 10501(b) (emphasis added). The ICCTA defines "transportation" to

include:

> **(A) a *locomotive, car, vehicle*, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and**
>
> **(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, *and interchange of passengers and property*.**

49 U.S.C. § 10102(9) (emphasis added).

{¶19} The trial court relied on various cases cited by CSX in its motion to

dismiss to conclude that section § 10501(b) of the ICCTA "amounts to an express

preemption of Ohio's blocked crossing statute." (Doc. No. 30 at 3). These cases

rely upon the premise that the anti-blocking statute is a state remedy that directly

*regulates rail transportation*, the jurisdiction of which is conferred exclusively to

the STB. Therefore, such a remedy as one provided for in R.C. 5589.21 is expressly preempted by the ICCTA.[3] *See e.g.*, *State v. Norfolk S. Ry. Co.*, 107 N.E.3d 468, 472 (Ind. 2018)(finding the ICCTA both expressly and categorically preempted Indiana's blocked crossing statute); *See also*, *State v. BNSF Ry. Co.*, 56 Kan.App.2d 503, 518 (2018)(concluding that Kansas's anti-blocking statute is preempted by the ICCTA because it "infringes on the exclusive jurisdiction of the STB to regulate the rail transportation system in the United States"); *CSX Transportation, Inc., v. Williams*, N.D.Ohio No. 3:16CV2242, 2017 WL 1544958 (Apr. 28, 2017)(issuing a declaratory judgment finding that "the ICCTA categorically preempts R.C. 5589.21 because it purports to regulate rail transportation by dictating how railroads conduct their operations at crossings").

{¶20} In determining whether a state action "regulates" rail transportation and thus is preempted under the ICCTA, the Supreme Court of Ohio, in the context of a state eminent-domain action over a parcel of property owned by a railway company, adopted the approach from various federal circuit courts that "Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, Black's Law Dictionary 1286 (6th Ed.1990),

---

[3] Some of these cases cited by the trial court invalidate R.C. 5589.21 solely on the grounds that it is preempted by the FRSA, rather than the ICCTA. Although not expressly stated in its reasoning, the trial court appears to also tacitly endorse the alternative conclusion that R.C. 5589.21 is also preempted by the FRSA.

while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Youngstown Belt Ry.*, 134 Ohio St.3d 79, 2012-Ohio-5370, ¶ 23 (2012), quoting *Florida E. Coast Ry. Co. v. W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir.2001); further citing, *Franks Invest. Co. L.L.C. v. Union Pacific RR. Co.*, 593 F.3d 404, 410 (5th Cir.2010); *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir.2009); *Adrian & Blissfield RR. Co. v. Blissfield*, 550 F.3d 533, 539 (6th Cir.2008); *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir.2007).

*Discussion*

{¶21} In anticipation of the inevitable conflict between the federal government safeguarding the operations of the railroad companies and the State's traditional police power to pass legislation protecting the health and safety of its citizens, the Ohio Legislature enacted R.C. 5589.20, which specifically articulates the police power interests of this State as to railroad crossings in the following terms:

> **The general assembly finds that the improper obstruction of railroad grade crossings by trains is a direct threat to the health, safety, and welfare of the citizens of this state inasmuch as improper obstructions create uniquely different local safety problems by preventing the timely movement of ambulances, the vehicles of law enforcement officers and firefighters, and official and unofficial vehicles transporting health care officials and professionals. It is the intent of the general assembly in amending sections 5589.21, 5589.24, and 5589.99 of the Revised Code that the health, safety, and welfare of the citizens of this state be enhanced through those amendments.**

R.C. 5598.20.

{¶22} In the past several years, CSX and other railroad companies, through litigation in various jurisdictions, have successfully argued to either significantly marginalize or judicially nullify statutes such as R.C. 5589.20 on the grounds that the state police power articulated in such statutes is pre-empted and superseded by the Supremacy Clause, at least insofar as it pertains to any railroad company. The legal and practical impact of any court ruling in favor of this position is that state and local municipalities are without any authority to implement their traditional police powers to protect the health, safety, and welfare of their citizens by ensuring that public roadways are free from prolonged obstruction by a railroad company.

{¶23} At the core of any such ruling is acceptance of the railroad's position that virtually all conduct of the railroad company at these public crossings can be construed as "transportation," and "operation," and that any attempt by the State to legislate in this area, other than perhaps provisions directed to merely maintaining the public roadways near the crossings and the like, constitutes impermissible "management" or "governance" of the railroad operation under the ICCTA. This proposition in turn endorses CSX's interpretation of its own conduct, regardless of its purpose or community impact, as always constituting "federal action" on national rail transportation per se so as to leave no room for the exercise of state police

powers to occupy the same sphere, essentially rendering any concept of federalism irrelevant in this specific circumstance.

{¶24} For the State's part, it is argued that at its core, R.C. 5589.21 only imposes an *economic cost* upon CSX for obstructing a public railroad crossing for longer than five minutes, unless the train is continuously moving or the obstruction of the crossing is caused by circumstances wholly beyond the control of the railroad company. As such, while there may be a deterrent effort expressed in the statute, the legislation itself contains no language that could be construed as otherwise *managing* or *governing* the operations of CSX or *interfering* with rail "transportation."

{¶25} In other words, the effect of R.C. 5589.21 on rail transportation is merely incidental or remote due to the fact that if CSX and other railroad companies continue to choose to manage and conduct their operations as they presently do, without regard to whether or not they comply with R.C. 5589.21, they could be required to pay a monetary fine on some of those occasions when they do not. Arguably, the instances where the railroad may be subject to the imposition of such a cost are negligible, both in terms of the totality of railroad operations in the State, and when compared to the inconvenience and the diminished efficiency of first responders that the locality surrounding the obstructed public railroad crossing may experience.

{¶26} At the outset, we recognize that many of the arguments raised by the State have been made and rejected by a growing number of state and federal courts which have reached the conclusion that state anti-blocking statutes are preempted (expressly, categorically, or both) by the ICCTA. Nevertheless, we find the circumstances and arguments raised by CSX in the case before us to be distinguishable from many of those cases in at least one important respect.

{¶27} The majority of court decisions cited by CSX contain an evidentiary record of some kind originating from a trial or other hearing. As a result, multiple circumstances, such as the public safety conditions actually affected by the particular blockage or the nature of the specific railroad operations allegedly necessitating the crossing blockage, were considered and often weighed or at least reviewed by the court in reaching the conclusion that the interests of the railroad under the federal statutes must prevail over the police power interest of the state in a particular instance, or perhaps that the railroad conduct in that instance fit within a specific exception under the state crossing statute.

{¶28} Unlike those decisions, the case before us was decided on a motion to dismiss as a matter of law, without any evidentiary record, (or as noted earlier, only a marginal record in the form of very general affidavits attached to the motions) and thus without any consideration of any of those factual issues or circumstances. As a result, CSX was able to effectively argue and obtain a ruling from the trial court in

this case, that any consideration of either the public safety of the local community at the crossing or the specific necessity or purpose for the particular railroad operations at the time of the crossing blockage, or even any weighing of the general public policy underlying the statute or the general economic interests behind the railroad's conduct, is entirely irrelevant, as a matter of law.

{¶29} In other words, we believe the ruling obtained by CSX and under review in this case is uniquely sweeping in that it essentially holds that any attempt by the State to legislate regarding the conduct of a railroad at a railroad crossing in this state constitutes per se impermissible "governance," "management" and "significant interference" with the federal transportation and operation interests of the railroad under the ICCTA and is therefore *void ab initio*.

{¶30} We fundamentally disagree with the foregoing proposition and we therefore respectfully decline to accept or adopt it.

{¶31} We have already acknowledged and cited a number of federal and state courts from around the country, which seem to have accepted and adopted the interpretations of the ICCTA and its impact upon R.C.5589.21 set forth above, but which are not binding on any Ohio Court and which we have declined to follow. As such, it is our view that the matters determined by our ruling in this case clearly raise a substantial constitutional question and presents an issue of great public importance in Ohio regarding the fundamental police powers of the state legislature

to protect the public safety and welfare, not to mention fundamental notions of federalism, which can appropriately be decided and resolved only by the Supreme Court of Ohio.

{¶32} Perhaps stated in more practical terms, it is our view that if any Ohio court is going to adopt and incorporate the judicial determination of other jurisdictions as the law of Ohio that under the ICCTA, a railroad company has untrammeled discretion to block any rail crossing in any community in the state for any purpose, for any amount of time, regardless of its reasons or operational necessity, and regardless of the jeopardy to the public health, safety and welfare of the citizens caused by that blocked crossing; and that any legislation enacted by the duly elected state legislature to address those specific public health, safety and welfare concerns in terms which even remotely appear designed to influence or dissuade the behavior of the railroad company at such a crossing, is null and *void ab initio*, then the court making that ruling should be the Supreme Court of Ohio.

{¶33} For the foregoing reasons, the State's assignment of error is sustained and the judgments of the trial court are reversed and remanded for further proceedings consistent with this opinion.

***Judgments Reversed and***
***Causes Remanded***

**WILLAMOWSKI, J., concurs.**

-19-

Case Nos. 14-19-07, 08, 09, 10, 11

**ZIMMERMAN, J., dissents**

{¶34} The trial court found that R.C. 5589.21 is expressly preempted by the ICCTA. Passed by Congress in 1995, "[t]he ICCTA was enacted to encourage competitive rates for rail transportation, to minimize regulatory control, and to promote efficiency as well as public health and safety." *Girad v. Youngstown Belt Ry. Co.*, 134 Ohio St. 3d 79, 2012-Ohio-5370, ¶ 18, citing 49 U.S.C. § 10101 *et seq.* In order to achieve this end, Congress abolished the Interstate Commerce Commission and created the Surface Transportation Board ("STB"). Under the ICCTA, the STB was granted *exclusive jurisdiction* over certain aspects of interstate rail activity:

> **(b)** **The jurisdiction of the Board over—**
>
> **(1)** *transportation* **by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and**
>
> **(2)** **the construction, acquisition,** *operation***, abandonment, or** *discontinuance of spur, industrial, team, switching, or side tracks***, or facilities, even if the tracks are located, or intended to be located, entirely in one State,**
>
> **is exclusive. Except as otherwise provided in this part,** *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.*

49 U.S.C. § 10501(b) (emphasis added). The ICCTA defines "transportation" to include:

> **(A) a *locomotive, car, vehicle*, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and**
>
> **(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, *and interchange of passengers and property*.**

49 U.S.C. § 10102(9) (emphasis added).

{¶35} The trial court relied on various cases cited by CSX in its motion to dismiss to conclude that section § 10501(b) of the ICCTA "amounts to an express preemption of Ohio's blocked crossing statute." (Doc. No. 30 at 3). These cases rely upon the premise that the anti-blocking statute is a state remedy that directly *regulates rail transportation*, the jurisdiction of which is conferred exclusively to the STB. Therefore, such a remedy as one provided for in R.C. 5589.21 is expressly preempted by the ICCTA.[4] *See e.g.*, *State v. Norfolk S. Ry. Co.*, 107 N.E.3d 468, 472 (Ind. 2018)(finding the ICCTA both expressly and categorically preempted Indiana's blocked crossing statute); *See also*, *State v. BNSF Ry. Co.*, 56 Kan.App.2d 503, 518 (2018)(concluding that Kansas's anti-blocking statute is preempted by the

---

[4] Some of these cases cited by the trial court invalidate R.C. 5589.21 solely on the grounds that it is preempted by the FRSA, rather than the ICCTA. Although not expressly stated in its reasoning, the trial court appears to also tacitly endorse the alternative conclusion that R.C. 5589.21 is also preempted by the FRSA.

ICCTA because it "infringes on the exclusive jurisdiction of the STB to regulate the rail transportation system in the United States"); *CSX Transportation, Inc., v. Williams*, N.D.Ohio No. 3:16CV2242, 2017 WL 1544958 (Apr. 28, 2017)(issuing a declaratory judgment finding that "the ICCTA categorically preempts R.C. 5589.21 because it purports to regulate rail transportation by dictating how railroads conduct their operations at crossings").

{¶36} In determining whether a state action "regulates" rail transportation and thus is preempted under the ICCTA, the Supreme Court of Ohio, in the context of a state eminent-domain action over a parcel of property owned by a railway company, adopted the approach from various federal circuit courts that "Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, Black's Law Dictionary 1286 (6th Ed.1990), while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Youngstown Belt Ry.*, 134 Ohio St.3d 79, 2012-Ohio-5370, ¶ 23 (2012), quoting *Florida E. Coast Ry. Co. v. W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir.2001); further citing, *Franks Invest. Co. L.L.C. v. Union Pacific RR. Co.*, 593 F.3d 404, 410 (5th Cir.2010); *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir.2009); *Adrian & Blissfield RR. Co.*

*v. Blissfield*, 550 F.3d 533, 539 (6th Cir.2008); *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir.2007).

**{¶37}** In short, the trial court's dismissal was the correct legal solution here. Accordingly, while I am sympathetic to the majority's attempt to push back at CSX's obstructionist behavior at public crossings, the dearth of state and federal case authority supports an affirmance. Therefore, I would affirm the trial court's dismissal.