[Cite as *Quinones v. Ladejo*, 2021-Ohio-1988.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

SUSAN QUINONES, AS LEGAL
GUARDIAN OF DAVID N.
SCHEEHLE, et al.,

        Plaintiffs-Appellants,

- v -

OLANYANJU LADEJO, et al.,

        Defendants,

PROSERV LOGISTICS LLC,

        Defendant-Appellee.

CASE NO. 2021-T-0003

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2020 CV 00883

---

# O P I N I O N

Decided: June 14, 2021
Judgment: Reversed and remanded.

---

*Christopher J. Van Blargan*, Kisling, Nestico & Redick, LLC, 3412 West Market Street, Akron, OH 44333 (For Plaintiffs-Appellants).

*Kurt D. Anderson* and *Patrick M. Roche*, Collins, Roche, Utley & Garner, LLC, 875 Westpoint Parkway, Suite 500, Cleveland, OH 44145 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Appellants, Joyce McKenzie and Susan Quinones, the mother and the guardian of David N. Scheehle, respectively, appeal from the judgment dismissing their complaint. We reverse and remand.

{¶2} This case stems from a vehicle collision on the Ohio Turnpike where a commercial tractor-trailer operated by an employee of Wisconsin Trucks, Inc. ("Wisconsin Trucks") rear-ended Scheehle's vehicle. As a result of the collision, Scheehle sustained serious injuries. Appellants filed a complaint against several parties including Wisconsin Trucks and its freight broker, ProServ Logistics, LLC ("ProServ"). Appellants maintained that Wisconsin Trucks, ProServ, and others were vicariously liable for the truck driver's negligence, that they negligently entrusted the truck driver with the tractor-trailer, and that they breached their duties as "employers, brokers, or shippers to exercise reasonable care in hiring competent drivers' and/or carriers and in instructing, training, supervising, and retaining driver and/or carriers."

{¶3} Thereafter, ProServ filed a motion to dismiss, arguing that appellants' claims against it were preempted by the Federal Aviation Administration Authorization Act ("FAAAA").

{¶4} On December 23, 2020, the trial court dismissed appellants' claims against ProServ. On January 8, 2020, the trial court entered an entry nunc pro tunc to the December 23, 2020 judgment finding there was no just cause for delay pursuant to Civ.R. 54(B).

{¶5} Appellants assign one error:

{¶6} "The trial court erred in finding the FAAAA preempted Quinones' claim of vicarious liability and negligent selection, supervision, and retention, and in dismissing those claims for lack of subject matter jurisdiction under Civil Rule 12(B)(1)."

2

{¶7} We review a trial court's dismissal pursuant to Civ.R. 12(B)(1) de novo.[1] *Jones v. Ohio Edison Co.*, 2014-Ohio-5466, 26 N.E.3d 834, ¶ 7 (11th Dist.), citing *Washington Mut. Bank v. Beatley*, 10th Dist. Franklin No. 06AP-1189, 2008-Ohio-1679, ¶ 8.

{¶8} The Supremacy Clause of the United States Constitution provides that the U.S. Constitution and "the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Constitution, Article VI, cl. 2. The Supremacy Clause gives Congress the power to preempt state law. *Minton v. Honda of Am. Mfg., Inc.*, 80 Ohio St.3d 62, 68, 684 N.E.2d 648 (1997), *abrogated on other grounds as stated in Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). However, "[i]t has 'long been settled' that a preemption analysis begins with the presumption that federal statutes *do not* preempt state law." (Emphasis added.) *State v. CSX Transp., Inc.*, 2020-Ohio-2665, 154 N.E.3d 327, ¶ 13 (3d Dist.), *appeal allowed*, 159 Ohio St.3d 1486, 2020-Ohio-4232, 151 N.E.3d 635, ¶ 13, quoting *Bond v. United States*, 572 U.S. 844, 858, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014); *Minton* at 69 ("[I]n considering issues arising under the Supremacy Clause, courts must start with the

---

1. In the trial court, appellants maintained that the more appropriate procedure to challenge their complaint would have been through a Civ.R.12(B)(6) motion for failure to state a claim on which relief could be granted. However, because appellants have not raised this issue as error, and because the parties do not appear to presently dispute the relevant facts required for review, we do not pass upon this issue. *See Washington Mut. Bank v. Beatley*, 10th Dist. Franklin No. 06AP-1189, 2008-Ohio-1679, ¶ 8-13 (noting that trial court may consider facts outside of the allegations of the complaint when deciding a motion for dismissal pursuant to Civ.R. 12(B)(1), whereas the court is confined to the four corners of the complaint when deciding a motion for dismissal pursuant to Civ.R. 12(B)(6)).

3

assumption that the historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." (Citations omitted.)).

{¶9} At issue here is the preemptive effect of the FAAAA:

> After deregulating trucking through the Motor Trucking Act of 1980, Congress enacted the Federal Aviation Authorization Administration Act ("FAAAA") in 1994 in an effort to avoid "a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide."

*Creagan v. Wal-Mart Trans., LLC*, 354 F.Supp.3d 808, 812 (N.D.Ohio 2018), quoting *Rowe v. New Hampshire Motor Transport Assn.*, 552 U.S. 364, 368, 372, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008). The general express preemption clause of the FAAAA provides in relevant part: "Except as provided in paragraphs (2) and (3), a State * * * may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a * * * service of any * * * broker * * * with respect to the transportation of property." 49 U.S.C. 14501(c)(1); *see also Minton* at 69 (state law may be preempted through express, field, or conflict preemption). Common law duties are within the scope of the "law[s], rule[s], regulation[s], or other provision[s] having the force of law" for purposes of the FAAAA. *See Krauss v. IRIS USA, Inc.*, E.D.Pennsylvania No. 17-778, 2018 WL 2063839, *4 (May 3, 2018); *see also Gillum v. High Std., LLC*, W.D.Texas No. SA-19-CV-1378-XR, 2020 WL 444371, *3 (Jan. 27, 2020); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 522, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("the phrase 'state law' [includes] common law as well as statutes and regulations").

{¶10} Here, the parties do not dispute that ProServ is a "broker" for purposes of the FAAAA. *See* 49 U.S.C. 13102(2) (broker is "a person, other than a motor carrier * *

4

* that as a principal or agent sells, offers for sale, negotiates for, or holds itself out * * * as selling, providing, or arranging for, transportation by a motor carrier for compensation"). Instead, the parties argue whether the negligence claim is "related to" a broker's "services" with respect to the transportation of property.

{¶11} "The FAAAA's preemption provision was modeled on similar language in the Airline Deregulation Act of 1978, which had already been interpreted by the Supreme Court in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)." *Krauss* at *3, citing *Rowe* at 368. Therefore, courts similarly interpret the preemption provisions of the FAAAA and the ADA. *Id.* In interpreting these provisions, the phrase "related to" is broadly construed in accordance with its ordinary usage: "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with.'" *United Parcel Serv., Inc. v. Flores-Galarza*, 318 F.3d 323, 335 (1st Cir.2003), citing *Morales* at 383, quoting *Black's Law Dictionary* 1158 (5th ed.1979). Therefore, if the state law at issue "refers to and has a forbidden significant effect" on the "service of [a] broker * * * with respect to the transportation of property," such a law would come within the scope of the general preemption provision. *See United Parcel Serv.* at 335; *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260, 133 S.Ct. 1769, 185 L.E.2d 909 (2013). *See also Rowe* at 375, quoting *Morales* at 388 ("[S]tate laws whose 'effect' is 'forbidden' under federal law are those with a '*significant* impact' on carrier rates, routes, or services." (Emphasis sic.)).

{¶12} However, "'the breadth of the words "related to" does not mean the sky is the limit.'" *Loyd v. Salazar*, 416 F.Supp.3d 1290, 1295-96 (W.D.Oklahoma 2019), quoting *Dan's City Used Cars* at 260. "The Supreme Court has 'cautioned that [section]

5

Case No. 2021-T-0003

14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner.'" *Loyd* at 1295, quoting *Dan's City Used Cars* at 261. "Federal district courts are sharply divided on how to apply these guiding principles to personal injury claims alleging negligence by brokers in selecting motor carriers for the transportation of property." *Loyd* at 1295. *See, e.g., Ciotola v. Star Transp. & Trucking, LLC*, 481 F.Supp.3d 375, 390 (M.D.Pennsylvania 2020) (negligence claim not preempted because claim "does not directly reference prices, routes, or services of a broker or motor carrier, and does not place a significant financial impact on a broker or motor carrier's prices, routes, or services"). *But see, e.g., Loyd* at 1297-1298 (state-law negligent brokering claim is directly "related to" a broker's "services" of arranging for motor carriers to transport property).

{¶13} Appellants contend that because "[n]egligence claims alleging personal injury result[ing] from the failure of a business to use reasonable or ordinary care are generally applicable to all businesses," and because "such claims do not target the motor carrier industry," the claims only tangentially affect a broker's services. This argument finds support in the decisions of several federal district courts as discussed above and is consistent with the principle that "[i]n the interest of avoiding unintended encroachment on the authority of the States, * * * a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). "There could be no better example of a subject which is 'traditionally governed by state law' than a common-law tort claim*." In re Miamisburg Train Derailment Litigation*, 68 Ohio St.3d 255, 261, 626 N.E.2d 85 (1994).

{¶14} However, given the broad language employed in the general preemption provision, and because the negligence claim pertains to the selection of carriers, which is the core function of a broker by statutory definition, we are persuaded by the analysis of *Creagan*, 354 F.Supp.3d at 813, on this issue. Therein, the court reasoned with respect to the general preemption provision:

> While the FAAAA provides no definition of "services," it defines transportation to include "services related to th[e] movement [of passengers or property], including arranging for" the transportation of passengers or property. 49 U.S.C. § 13102(23)(B). A broker does just that– "arrange for" the transportation of a shipment by a motor carrier. *See* 49 U.S.C. § 13102(2). Regardless of whether the broker's alleged negligence in its choice of motor carrier results in property damage or personal injury, the service remains the same. * * * Further, because the negligent hiring claim seeks to enforce a duty of care related to how Kirsch (the broker) arranged for a motor carrier to transport the shipment (the service), the claim falls squarely within the preemption of the FAAAA.

(Footnotes and internal citations omitted.) *Id.* *See also Loyd,* 416 F.Supp.3d at 1297; *Gillum*, 2020 WL 444371, at *4. Moreover, the only federal circuit court to have reviewed this issue has also found that such negligence claims against a broker fall within the scope of the general preemption provision. *See Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1023 (9th Cir.2020).

{¶15} Nonetheless, appellants argue that even should the negligence claims relate to the broker's services and fall within the general preemption provision, the claims are saved by 49 U.S.C. 14501(c)(2)(A), which excepts from preemption

> the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum

7

amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]

"Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439, 122 S.Ct. 2226 (2002).

{¶16} As with interpretation of section 14501(c)(1), there is a split in the federal district courts as to whether the safety regulation exception in section 14501(c)(2)(A) saves negligence claims against brokers when the contracted carrier is involved in a vehicle collision. *See, e.g., Lopez v. Amazon Logistics, Inc.*, 458 F.Supp.3d 505, 515 (N.D.Texas 2020) ("Because it is feasible to read 'state safety regulatory authority' as encompassing common law claims, the Court declines to adopt a plausible but narrower construction."). *But see, e.g., Krauss*, 2018 WL 2063839, at *5 ("The Court concludes that it is more true to persuasive precedential and common-sense analysis to hold that the claim for personal injuries arising out of the shipment in this case is preempted.").

{¶17} The best evidence of Congress' pre-emptive intent is statutory language. *Dan's City Used Cars,* 569 U.S. at 260. Based upon the language of the safety regulatory exception, the *Creagan* court concluded that the exception did not save a negligence claim against a broker. The court reasoned, "Because the negligent hiring claim seeks to impose a duty on the service of the broker *rather than regulate motor vehicles*, * * * this claim is not within the safety regulatory authority of the state and the exception does not apply." (Emphasis added.) *Creagan,* 354 F.Supp.3d at 814.

{¶18} However, in *Miller*, 976 F.3d at 1026, the Ninth Circuit concluded that the safety regulatory exception saved negligence claims against brokers. The *Miller* court

8

emphasized that in enacting the FAAAA, "Congress was primarily concerned with the States regulating *economic* aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws" and not with restricting the safety authority of the state. (Emphasis sic.) *Id.* The *Miller* court reasoned that the state's authority over safety matters includes "the ability to regulate safety through common-law tort claims." *Id.* Further, the court found that nothing in the FAAAA's legislative history suggested that "Congress intended to eliminate this important component of the States' power over safety." *Id.*

{¶19} Moreover, the *Miller* court noted that, "while it is possible to construe 'the safety regulatory authority of a State' more narrowly, 'when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption."'" *Id.* at 1027, quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 19, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008). The court then determined:

> Because a narrower construction of this clause would place a large body of state law beyond the reach of the exception, we find it appropriate to interpret the clause broadly. *See id.* (describing this approach as "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety[.]").

*Miller* at 1028, quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The *Miller* court rejected the broker's argument that the U.S. Supreme Court's use of the term "police power" in *Ours Garage* when describing the state's safety regulatory authority indicated that the exception extends only to positive legislative enactments. *Miller* at 1028, citing *Ours Garage*, 536 U.S. at 439. The *Miller* court concluded:

9

[T]his argument reads too much into *Ours Garage*. At issue in that case were municipal regulations governing tow truck operations—an undisputed exercise of the "safety regulatory authority of a State" and of the "police power." The Supreme Court therefore had no reason to consider whether the safety exception is broader than this language suggests. And, as noted, we have found no indication in the FAAAA's legislative history that Congress intended to limit the safety exception in this way.

*Miller* at 1028.

{¶20} Further, the *Miller* court explained that the safety regulatory exception for negligence claims against brokers is with respect to "motor vehicles":

We have previously held that the phrase "with respect to" in the safety exception is synonymous with "relating to." [*California Tow Truck Assn. v. City & Cty. of San Francisco*, 807 F.3d 1008, 1021 (9th Cir.2015), quoting *In re Plant Insulation Co.*, 734 F.3d 900, 910 (9th Cir.2013)]. "Consequently, the FAAAA's safety exception exempts from preemption safety regulations that 'hav[e] a connection with' motor vehicles," whether directly or indirectly. *Id.* at 1021-22[, quoting] *Dan's City Used Cars*, 569 U.S. at 260, 133 S.Ct. 1769[.] For example, we have held that the safety exception applies to municipal regulations governing who may obtain a tow truck permit, including a requirement that permit applicants disclose their criminal history. *Id.* at 1026-27. In reaching this conclusion, we rejected the argument that the "valid safety rationales" in this context are limited "to those concerned only with the safe physical operation of the tow trucks themselves." *Id.* at 1023. "Rather, regulations that are 'genuinely responsive' to the safety of other vehicles and individuals involved in the towing process may also be exempted from preemption." *Id.*

(Footnotes omitted.) *Miller* at 1030.

{¶21} We find *Miller* persuasive. Accordingly, we conclude that the safety regulatory exception in 49 U.S.C. 14501(c)(2)(A) saves the negligence claims at issue here.

Case No. 2021-T-0003

{¶22} Nonetheless, ProServ maintains that we should afford the *Creagan* decision comity because *Creagan* is the only decision from the Northern District of Ohio to speak to the issue presented. ProServ's argument in this regard has evolved from its argument before the trial court, where ProServ maintained that the *Creagan* decision was *binding*. Regardless, ProServ has not cited any convincing authority persuading this court to provide comity to a federal district court merely because it is located within the geographic territory of the federal circuit where the underlying incident occurred.

{¶23} Therefore, the assigned error has merit, and the judgment is reversed. This matter is remanded for further proceedings consistent with this opinion.

MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2021-T-0003